# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT COURT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KOBE PINKNEY,<br>**Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| MEADVILLE, PENNSYLVANIA,<br>& | : | |
| POLICE CHIEF MICHAEL J. TAUTIN,<br>& | : | |
| PATROLMAN JARED FRUM,<br>& | : | |
| ALLEGHENY COLLEGE,<br>& | : | |
| SERGEANT WILLIAM MERCHBAKER,<br>& | : | |
| FIRST ASSISTANT DISTRICT ATTORNEY PAULA DIGIACOMO<br>& | : | |
| MEADVILLE TRIBUNE,<br>& | : | |
| COMMUNITY NEWSPAPER HOLDING, INC.,<br>& | : | |
| KEITH GUSHARD,<br>**Defendants,** | : | |

## AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1. This is a civil rights complaint brought under 42 U.S.C. Section 1983 seeking compensatory and punitive damages for false arrest, false imprisonment, malicious prosecution, and the violation of the constitutional guarantee of equal protection against Defendants, Patrolman Jared Frum and Sergeant William Merchbaker, who while acting under color of state law, detained, arrested, charged and imprisoned the Plaintiff, Kobe Pinkney, for allegedly committing a heinous criminal assault at a

-1-

Meadville, Pennsylvania bar, without any credible evidence supporting reasonable suspicion and/or probable cause that he committed the assault, on account of racial animus and bias.

This Complaint also raises supplemental state claims, including the intentional infliction of emotional distress and invasion of privacy through defamatory publicity placing Plaintiff in a false light, by Defendants First Assistant District Attorney Paula Digiacomo, Keith Gushard, Meadville Tribune, and Community Newspaper Holding Inc. In a May 15, 2019 Meadville Tribune article written by Mr. Gushard, ADA Paula DiGiacomo stated that Plaintiff was still a suspect for committing the assault, after the criminal case against him had been withdrawn, due to the overwhelming evidence available to the Commonwealth making it abundantly clear that Plaintiff was innocent and the assault had been committed by another man identified by eyewitnesses. The Meadville Tribune is owned by Community Newspaper Holding, Inc. These claims also extend to Defendants Merchbaker and Allegheny College, where Sergeant Merchbaker, while acting as the Interior Director of Public Safety for Allegheny College detained Plaintiff, a student at Allegheny College, while he was attending a Philosophy class.

The actions and conduct of Patrolman Frum and Sergeant Merchbaker, are the result of a policy, practice, custom and deliberate indifference on the part of the Defendants Meadville, Pennsylvania, Allegheny College, and Meadville Chief of Police, Michael J. Tautin, as well as the policies promulgated by Merchbaker, as the Interim Director of Public Safety for Allegheny College.

## JURISDICTION

2.     This Court has jurisdiction over the subject matter of the Complaint under 42 U.S.C. Section 1983 and 28 U.S.C. Section 1331, 1343(a)(3), 1343(a)(4) and 1367(a).

## PARTIES

3.     The Plaintiff, Kobe Pinkney, is and was at all times relevant to this Complaint, a full time student at Allegheny College in Meadville, Pennsylvania

4.     The Defendant, Meadville, Pennsylvania is a municipality in the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Meadville, Pennsylvania Police Department.

5.     The Defendant, Police Chief Michael J. Tautin, is and was at all times relevant to the Complaint a resident of Crawford County, Pennsylvania and was acting in the capacity as the Chief of Police of the Meadville, Pennsylvania Police Department under color of state law.    He is sued in his individual and official capacity, as the Chief of Police of the Meadville, Pennsylvania Police Department.

6.     The Defendant, Patrolman Jared Frum, is and was at all times relevant to this Complaint a resident of Crawford County, Pennsylvania and was acting in his capacity as a Patrolman in the Meadville, Pennsylvania Police Department under color of state law.    He is sued in his individual and official capacity.

7.  The Defendant Allegheny College, is a private, co-educational liberal arts college receiving state and federal funding, located in Meadville, Pennsylvania, which owns, operates, manages, directs and controls the Allegheny College

Department of Public Safety.

8. The Defendant, Sergeant William Merchbaker, is and was at all times relevant to this Complaint a resident of Crawford County, Pennsylvania and a Sergeant in the Allegheny College Department of Public Safety, acting under color of state law. He is sued in his individual and official capacity.

9. The Defendant, First Assistant District Attorney Paula DiGiacomo, is an Assistant District Attorney with the Crawford County District Attorney's Office. She is sued in her individual and official capacity.

10. The Defendant, Meadville Tribune, is a seven daily morning newspaper published in Meadville, Pennsylvania.

11. The Defendant, Community Newspaper Holding Inc., is an American publisher of newspapers, which owns Defendant Meadville Tribune, and has a headquarters in Montgomery, Alabama.

12. The Defendant Keith Gushard is a journalist working for Defendant Meadville Tribune. He is sued in his individual capacity.

13. Defendants Meadville, Pennsylvania and Allegheny College, are under a duty and responsibility to run their policing activities in a lawful manner so as to preserve for their citizens the rights, privileges and immunities guaranteed and secured to them by the Constitution and laws of the United States, and the Commonwealth of Pennsylvania.

14. Meadville, Pennsylvania and Allegheny College, respectively delegated to the Defendants, Chief of Police Chief Michael J. Tatutin and Interim Director of Public Safety, Sergeant William Merchbaker, the responsibility for establishing the

implementation of policies, the practices, procedures, or customs used by law

enforcement officers employed by the Meadville, Pennsylvania Police Department

and Allegheny College Department of Public Safety, including Defendants,

Patrolman Jared Frum and Sergeant Merchbaker, regarding the determination of

probable cause for arrest, the issuance of criminal complaints and the initiation of

criminal prosecutions.

15.     Each and all of the acts of the individual Defendants involved in this

incident performed under the color and pretense of the Constitution, statutes

ordinances, regulations, customs and uses of the United States of America,

Commonwealth of Pennsylvania, and Meadville, Pennsylvania, were under the

color of law and by virtue of their authority as law enforcement officers and

prosecutors and the course and scope of their employment with the Meadville,

Pennsylvania Police Department, Allegheny College Department of Public Safety

and District Attorney of Crawford County, Pennsylvania.

## FACTUAL ALLEGATIONS

16.   Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs one through fifteen.

17.   On April 7, 2019, at approximately 1:30 am, Patrolman Jared Frum of the

Meadville Police was on routine patrol in the area of Meadville Academy Theatre,

when he observed four males walking in middle of the street, just west of Julian's

Bar.

18.  Two of the men were carrying a third male, later identified as Rhett Happel,

whose left side of his face was swollen to the point that his left eye was swollen

shut.

19.  Patrolman Frum instructed the men to walk to the south side sidewalk, then radioed for an ambulance.

20.  None of the men saw what happened to Happel, however while they waited for the ambulance, one of the males volunteered that he believed that Happel had been assaulted and speculated that the attack stemmed from Happel being accused of drugging a female that had been found unconscious in the bathroom of Julian's Bar by police the previous night.

21.  The following evening, April 8, 2019, Patrolman Frum spoke with Happel's mother who reported that he had to undergo emergency surgery during which three plates and fifteen pins were placed in the left side of his face.

22.  On April 10, 2019, three days after Happel was injured, Patrolman Frum interviewed a witness at the Allegheny College Public Safety Building, with the assistance of Defendant, William Merchbaker, the Interim Director of Public Safety for Allegheny College.

23.  The witness told Patrolman Frum and Sergeant Merchbaker that the assailant was an African-American male approximately six feet tall, wearing braids, who walked up to Happel when he was in the bathroom at Julian's Bar tapped Happel's shoulder from behind then punched Happel on the left side of his face as Happel turned around.

24.  The witness further reported that after striking Happel, the assailant walked to the tavern side of Julian's Bar, then eventually left the establishment without being seen.

25. After the assault, the witness was contacted by Happel's friend, Evan Haines, who sent the witness a facebook photo of Jared Shaw, a white male that had been observed at Julian's Bar with the assailant on the evening of the assault, and an African-American male, later identified as the Plaintiff, Kobe Pinkney.

26. The witness recognized Plaintiff as the man that he saw punch Rhett Happel.

27. Haines showed the witness two additional photographs of Shaw and Pinkney together, both times the witness identified Plaintiff as the assailant.

28. Both Shaw and Pinkney are football players for Allegheny College.

29. Based on further investigation, Happel is regaining his memory, and recalls that, moments prior to the assault, Jared Shaw and his girlfriend, who has a first name of "Chloe," confronted him inside the bar, accusing him of drugging Chloe the night before, causing her to fall unconscious.

30. Shaw and Chloe followed Happel to the men's bathroom, where Happel was punched after being touched on the shoulder from behind.

31. Apparently, these facts were known by the Meadville Police Department, because Happel was deemed a person of interest, for possibly conspiring with the assailant out of retaliation for Happel drugging Chloe.

32. Consequently, the police offered Happel immunity from prosecution, in exchange for Happel identifying the assailant.

33. Despite the offer of immunity, Happel refused to cooperate and hired a local Crawford County attorney, Joseph Ferguson, Esquire.

34. Without Happel's cooperation, based on the albeit egregiously suggestive post incident identification by the witness, a warrant was issued for the arrest of

Plaintiff.

35. The next day, April 11, 2019, Sergeant Merchbaker removed Plaintiff from a Philosophy lecture, after which Plaintiff was arrested by the Defendant Frum.

36. Plaintiff was arraigned by Crawford County Magisterial District Court Judge, the Honorable Samuel V. Pendolino, on the charges of Aggravated Assault, **18 Pa.C.S.A. Section 2702(a)(1), (F1)**, Simple Assault, **18 Pa.C.S.A. Section 2701(a)(1)**, and Harassment, **18 Pa.C.S.A. Section 2709(a)(1), (S)**. (Kobe Pinkney Criminal Complaint and Affidavit of Probable Cause, attached hereto and marked Exhibit "A").

37. Judge Pendolino set bail at $5,000.00, ten percent.

38. Plaintiff's preliminary hearing was set for April 25, 2019, but eventually continued to May 22, 2019, at 10:00 am.

39. Plaintiff's arrest and the alleged circumstances surrounding the assault of Rhett Happel were reported by Meadville Tribune reporter, Defendant, Keith Gushard.

40. After Plaintiff's arrest numerous eyewitnesses came forward and claimed that Plaintiff did not assault Rhett Happel and had not even been at Julian's bar on the night of the assault.

41. Among the witnesses, were Joe Hayes and Bryan Hill, who informed Plaintiff's counsel that they were at Julian's Bar on the night of the assault of Rhett Happel, did not see Plaintiff at the Bar anytime that evening, but did see the aftermath of the assault and recognized the likely assailant to be Josiah Williams of Syracuse, New York, an African-American male with braids, who was a former football

player at local St. Francis University, before transferring to the University of Buffalo.

42. Plaintiff's counsel immediately relayed the information provided by Hayes and Hill, as well as their contact information to Meadville, Pennsylvania Assistant Chief of Police Michael Stefanucci.

43. Plaintiff's counsel also provided Assistant Chief Stefanucci with contact information for Josh Miller, Plaintiff's roommate who would have told Chief Stefannuci that Plaintiff was at a Theta Chi fraternity party for the better part of the evening of April 6th, and that Plaintiff returned to the dorm at approximately 1:15 am, where shortly thereafter Plaintiff received a phone call from Jared Shaw detailing Josiah William's assault against Rhett Happel.

44. Plaintiff's counsel also provided the identity of Josiah Williams, as well as Mr. Williams' Syracuse address to Assistant Chief Stefanucci.

45. Unlike Josiah Williams, Plaintiff does not have braids in his hair.

46. Plaintiff's mother, Monique Johnson, was also able to provide Assistant Chief Stefanucci with Plaintiff's receipt from McDonald's which had a stamped date and time of 4/07/2019, 1:00 am, which was coincident with the date and time of the assault against Happel. (Printed Copy of McDonald's Receipt, attached hereto and marked Exhibit "A").

47. Further, the police were provided with time cards, showing that Plaintiff checked back into his dorm on April 7th at at 1:17 am. (Plaintiff Kobe Pinkney's Allegheny College Access Log, attached hereto and marked Exhibit "B").

48. On April 15, 2019, Plaintiff's counsel sent an email outlining evidence of Plaintiff's innocence to Defendant, Keith Gushard, who reported the assault of

Rhett Happel and Plaintiff's arrest in the Meadville Tribune, but Defendant

Gushard did not respond and did not report the information relayed by Plaintiff's

counsel. (April 15 Press Release of Plaintiff's Criminal Defense Attorney.attached

hereto and marked Exhibit "D").

49.     Gushard's article depicting Plaintiff as the assailant, also shockingly,

included publishing Plaintiff's home address in Maryland, a malicious and

intentional intrusion upon Plaintiff's fundamental right to seclusion of private

concerns.    (April 15 Meadville Tribune Article of Keith Gushard, attached hereto

and marked Exhibit "E")

50.  Additionally, as Plaintiff's preliminary hearing date of May 22, 2019

approached Plaintiff's counsel accumulated an additional statement from Jacob

Reidenbach, who provided the Defense with an Affidavit attesting that sometime

in the early morning hours of April 7, 2019, he was outside of Julian's Bar when he

saw Josiah Williams approach Rhett Happel and the men carrying Happel out of

Julian's Bar and tell the group that he was the person that beat up Happel and,

then threatened to fight the entire group.    (Affidavit of Jacob Reidenbach

attached hereto and marked Exhibit "F").

51.  The Defense was also provided with affidavits from Rosslin Watson and

Brianna Kenney, attesting that on the evening of April 6, 2019 they went to a party

at the Theta Chi fraternity house, at approximately 11:00 am and remained there

with Plaintiff until they all went to McDonald's at 1:00 am, after which they all

returned to their dorm at Allegheny College.    (Affidavit of Rosslin Watson,

attached hereto and marked Exhibit "G").

52. Before the Defense could provide this information over to the Meadville Police Department, on May 15, 2019, apparently based on further investigation, the Commonwealth withdrew the charges against Plaintiff.

53. The witness who had identified Plaintiff as the assailant after viewing the facebook photos of Plaintiff with Jared Shaw, recanted his identification of Plaintiff and admitted that Plaintiff was not the man he saw attack Rhett Happel.

54. As part of the investigation which exonerated Plaintiff, a ring that had been confiscated from Plaintiff and believed to be a foreign object utilized in the assault against Happel yielded negative results from forensic testing analysis.

55. Additionally, Plaintiff was not observed in a videotape obtained from the Julian's Bar, which apparently shows both Rhett Happel and Josiah Williams, but did not include Plaintiff.

56. Nevertheless, after the case was closed, despite the overwhelming evidence of Plaintiff's innocence, including the eyewitness recanting his claim that Plaintiff was the assailant, the Defendant, First Assistant District Attorney Paula DiGiacomo, stated in a Meadville Tribune article, written by Defendant, Kevin Gushard, that even though the case had been closed, Plaintiff remained a suspect.   (May 16, 2019 Meadville Tribune Article written by Defendant Keith Gushard, attached hereto and marked Exhibit "H").

57.     There was clearly no legal cause to justify the prosecution of Plaintiff for Aggravated Assault, Simple Assault, and Harassment.

58.     To the extent that there was legal cause to support the stop, detention and/or arrest of Plaintiff, the Defendants, Patrolman Frum and Sergeant

Merchbaker, failed to take reasonable steps to investigate and pursue information that would have indisputably negated any such legal cause, where Plaintiff's

defense team actually ascertained the identity of the person who assaulted Rhett Happel.

59. Clearly, where the purported eyewitness was permitted to make a post incident identification of Plaintiff through an egregiously suggestive identification procedure, wherein the victim having given a vague description of the assailant as an African-American male with braids who was seen with Jared Shaw, the witness was only shown photos of Jared Shaw accompanied by Plaintiff, who is African-American but does not have braids, Jared Shaw a white American, who was suspected of conspiring with the assailant, was offered immunity but has not been prosecuted for criminal conspiracy to commit aggravated assault, despite not cooperating, clearly race was the only motivating factor in the decision of Defendant Jared Frum and the Meadville Police Department to arrest Plaintiff, in violation of Plaintiff's right to Equal Protection under the Fourteenth Amendment.

60. At all times relevant to this Complaint, the conduct of Defendants Frum and Merchbaker was in willful, reckless and callous disregard of Plaintiff's rights under federal and state law.

61. The deliberate indifference displayed by Patrolman Frum in violating Plaintiff's constitutional rights to not be arrested without probable cause, and to be free of racial discrimination, stemmed from the failure of Defendant, Meadville, Pennsylvania Police Chief Michael J. Tautin as the principle policymaker and

implementer of practices, procedures and customs used by Meadville, Pennsylvania Police, to provide adequate supervision and training of Meadville, Pennsylvania Police Officers so that they would make arrests solely upon the establishment of a sufficient basis of probable cause, and be free of the taint of race based decision making.

62. The deliberate indifference displayed by Sergeant Merchbaker in detaining Plaintiff without reasonable suspicion, while Plaintiff was attending a college lecture, solely because of race, stemmed from Sergeant Merchbaker's failure as the principle policymaker and implementer of practices, procedures and customs used by Allegheny College Department of Public Safety, to provide adequate supervision and training of Allegheny College Police Officers so that they would detain criminal suspects, solely upon the establishment of reasonable suspicion that they had engaged in criminal activity, and be free of the taint of race based decision making.

63. As a direct and proximate result of the conduct of all defendants, Plaintiff suffered substantial damages, including psychological harm, some or all of which may be permanent.

64. The statement by Defendant, First Assistant District Attorney, Paula DiGiacomo, that Plaintiff continues to be a suspect in the investigation of the brutal assault of Rhett Happel, which was published in a Meadville Tribune article, written by Defendant Keith Gushard, where Happel was in fact assaulted by Josiah Williams and Plaintiff was not even present during the incident, is an egregious invasion of privacy which placed Plaintiff in false light before the public and

eviscerated Plaintiff's fundamental right to have a reputation of good standing in the community, and violated his fundamental right to seclusion of private concerns.

## CAUSES OF ACTION

### Count I

### (Civil Rights Action (42 U.S.C. Section 1983) Unlawful Stop and Detention against Defendant Sergeant Merchbaker

65.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-64.

66.  42 U.S.C. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

67.    Plaintiff had a firmly established right under the Fourth Amendment to be free from unreasonable seizure.

68.  A detention without reasonable suspicion that a citizen has committed a crime violates the Fourth Amendment prohibition on unreasonable searches and seizure.

69.  A police officer may stop and briefly detain a citizen based on reasonable suspicion of involvement in a crime.

70.  Plaintiff had committed no criminal offense or a traffic offense when Sergeant

Merchbaker detained Plaintiff and removed him from his Philosophy lecture.

71. Although a witness had identified Plaintiff from facebook photos as the man who savagely assaulted Rhett Happel, the identification was based upon a highly suggestive identification procedure in which Plaintiff was the only suspect shown to the witness, in a series of photographs, and each photograph of Plaintiff depicted him with Jared Shaw, who the victim alleged observed at the scene with the assailant.

72. Unlike the man described as the assailant by the victim, Defendant did not have braids in his hair.

73. Following Sergeant Merhbaker's detention of Plaintiff, and his subsequent arrest for the assault against Rhett Happel, the eyewitness that identified Plaintiff as the assailant recanted his post incident identification and told Meadville Police that Plaintiff was not the assailant.

74. Clearly, Defendant Merchbaker knew that there was no legitimate basis for the stop.

75. Defendant Merchbaker acted unreasonably in detaining and removing Plaintiff from his Philosophy class, after which Plaintiff was immediately arrested by the Meadville, Pennsylvania Police Department.

76. Defendant Merchbaker is not entitled to qualified immunity.

**77.** As a result of Defendant Merchbaker's action, Plaintiff suffered damages in an amount to be proven at trial.

### Count II

**(Civil Rights Action (42 U.S.C. Section 1983) False Arrest against Defendant Patrolman Jared Frum**

78.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-77.

79.  Plaintiff had a firmly established right under the Fourth Amendment to be free from arrest without probable cause.

80.  Defendant Patrolman Jared Frum arrested Plaintiff without probable cause, where the sole evidence was based on an egregiously suggestive post incident identification, which was ultimately recanted by the witness, and in any event Plaintiff did not even fit the physical description of the suspect given by the witness, where the witness reported that the assailant wore braids, and Plaintiff does not have braids in his hair.

81.  Further Patrolman Frum did not even question Jared Shaw, the man seen with the assailant, who had been arguing with Happel earlier that evening, to ascertain who Shaw was with.

82.  Incredibly, Patrolman Frum apparently offered Shaw immunity, then when Shaw chose not to give a statement, simply dropped that avenue of investigation.

83.  Defendant Frum was at this time performing his duties as a police officer for the City of Meadville, Pennsylvania.

84.  During the relevant time, Defendant Frum was acting under color and pretense of law, to wit, under color of the statutes, ordinances, regulations, customs and usages of the Commonwealth of Pennsylvania and the City of Meadville, Pennsylvania.

85.  Defendant Frum engaged in the illegal conduct to the injury of the Plaintiff

and deprived Plaintiff of the rights, privileges and immunities secured to him by the Fourth Amendment to the Constitution of the United States and the laws of the United States. Defendant Frum acted with callous disregard for the constitutionally protected rights of Plaintiff.

86.  Plaintiff was subjected to humiliation, fear and pain and suffering by the illegal act of Defendant Frum and suffered injuries as a result of Defendant Frum's actions.

87.  Defendant Frum is not entitled to qualified immunity.

88.  Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. Section 1988, and all applicable law, and such additional relief as the Court deems just.

## Count III

**[Civil Rights Action (42 U.S.C. Section 1983 False Imprisonment against Defendant Patrolman Jared Frum**

89.  Plaintiff re-alleges and incorporates by reference allegations contained in paragraphs 1-88.

90.  Defendant Frum unlawfully detained Plaintiff for an unreasonable period of time after he knew or should have known that Plaintiff had committed no crimes and therefore, did not have probable cause to detain Plaintiff.

91.  Defendant Frum was at this time performing his duty as a police office for Meadville, Pennsylvania.

92.  During the relevant time Defendant Frum was acting under color of law and the pretense of law, under the under the color of the statutes, ordinances

regulations, customs and usages of the Commonwealth of Pennsylvania and the City of Meadville, Pennsylvania.

93.  Defendant Frum engaged in the illegal conduct to the injury of Plaintiff and deprived him of the rights, privileges and immunities secured to him by the Fourth Amendment to the United States Constitution and the laws of the United States. Defendant Frum acted with callous disregard of the constitutional rights of Plaintiff.

94.  Plaintiff was subjected to humiliation and fear by the illegal act of Defendant Frum and suffered emotional injury as a result of Defendant Frum's actions.

95.  False imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.

96.  Defendant Frum is not entitled to qualified immunity.

97.  The conduct of Defendant Frum amounts to oppression and punitive damages should be assessed against Defendant Frum, for the purpose of punishment and for the sake of example.

98.  As a result of Defendant Frum's actions, Plaintiff suffered damages in the amount to be proven at trial.

## Count IV

**(Civil Rights Action (42 U.S.C. Section 1983) Malicious Prosecution against Defendant Patrolman Frum**

99.  Plaintiff re-alleges and incorporates by reference allegation contained in paragraphs 1-98.

100.  42 U.S.C. Section 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state of territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . . .

101.  Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. Section 1983.

102.  Defendant Frum at all times relevant hereto, was acting under the color of state law in his capacity as a Meadville, Pennsylvania police officer and his acts or omissions were conducted within the scope of his official duties or employment.

103.  At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

104.  Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at the time.

105.  Defendant Patrolman Jared Frum violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process when he secured false charges against Plaintiff, resulting in his unlawful confinement and prosecution.

106.  Defendant Patrolman Jared Frum intentionally and maliciously instituted a criminal proceeding for felonious aggravated assault against Plaintiff without

constitutional rights.

108. The procurement of prosecution against Plaintiff for the false allegation that he savagely beat Rhett Happel was malicious, shocking, and objectively unreasonable in the light of the circumstances.

109. The criminal case against Plaintiff was dismissed, resulted in the termination of the charges in his favor, reflecting a prosecutorial judgment that the case could not be proven beyond a reasonable doubt.

110. The acts or omissions of Defendant Frum was the moving force behind Plaintiff's injuries.

111. The acts or omissions of Defendant Frum described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

112. Defendant Frum is not entitled to qualified immunity for the complained of conduct.

113. Plaintiff was subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendant Frum, and suffered injuries as a result of Defendant Frum's actions.

114. Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. Section 1988, and all applicable law, and such additional relief as the Court deems just.

## COUNT V

**(Civil Rights Action (42 U.S.C. Section 1983) Racial Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. Section 1981 againt Defendants Patrolman Jared Frum and Sergeant William Merchbaker**

115.  Plaintiff re-alleges and incorporates by reference allegations contained in paragraphs 1-106.-

116.  **42 U.S.C. Section 1983** provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . . .

117.  Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. Section 1983.

118.  All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Meadville, Pennsylvania and Allegheny police officers respectively and their acts or omissions were conducted within the scope of their official duties or employment.

119.  At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

120.  Title 42 U.S.C. Section 1981 ("Section 1981") provides in pertinent part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws, and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, and licenses, and exactions of every kind, and to no other.

121.  Plaintiff, as an African-American is a member of a protected class, and thus also had the clearly established statutory right under this provision of 42 U.S.C. Section 1981 to be free from racially motivated arrests, searches and filing of false charges.

122.  Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

123.  Plaintiff's race was a motivating factor in the decision of Defendants to detain him without reasonable suspicion, arrest him without probable cause and maliciously prosecute him with false charges, where he was detained arrested merely because prior to the incident he took some facebook photos with a white male that was observed with the assailant at the scene.    Plaintiff in no way resembled the assailant, who unlike Plaintiff had braids, and was only arrested because like the assailant Plaintiff is African-American.

124.  Conversely, Jared Shaw, a white American, who was with Josiah Williams on the night he assaulted Rhett Happel, had engaged in a heated conversation with Happel, accusing him of drugging his girlfriend just prior to the assault, was ultimately offered immunity in exchange for identifying the assailant and is, therefore accordingly similarly situated to Plaintiff as a person of interest in the

Happel assualt investigation, has not been prosecuted despite his involvement and refusing to cooperate as a Commonwealth witness.

125. Defendants' conduct was undertaken with the purpose of depriving Plaintiff of the equal protection and benefits of the law, equal priviligas and immunities under the law, and due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1981.

126. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected rights.

127. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

128. These individual Defendants acted in concert and joint action with each other.

129. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

130. Defendants are not entitled to qualified immunity for the complained of conduct.

131. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

132. As a proximate result of Defendants' unlawful conduct Plaintiff has suffered emotional injuries and other damages and losses as described herein entitling him

to compensatory and special damages, in amounts to be determined at trial.

133.  On information and belief, Plaintiff may suffer lost future earnings as a result

of the public stigma flowing from such a high profile publicized case.    Plaintiff is

further entitled to attorneys' fees and costs pursuant to 42 U.S.C. Section 1988,

pre-judgment interest and costs as alllowable by federal law.

134.  In addition to compensatory, economic, consequential and special damages,

Plaintiff is entitled to punitive damages against each of the individually named

Defendants under 42 U.S.C. Section 1983, in that the actions of each of Patrolman

Frum and Sergeant Merchbaker have been taken maliciously, willfully or with a

reckless or wanton disregard of the constitutional rights of Plaintiff.

### COUNT VI

**(Civil Rights Action (42 U.S.C. Section 1983) - Deliberately Indifferent Policies, Practices, Customs, Training and Supervision in violation of the Fourth and Fourteenth Amendments and in violation of 42 U.S.C. Section 1981 against Defendants, Meadville, Pennsylvania, Chief of Police Michael Tautin, Allegheny College and Sergeant William Merchbaker**

135.  Plaintiff re-alleges and incorporates by reference allegations contained

paragraphs 1-134.

136.  42 U.S.C. Section 1983 provides that:

> Every person, who under color of any statute ordinance, regulation, custom usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in action at law, suit in equity, or other appropriate proceeding for redress . . . .

137.  Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. Section 1983.

138.  The Defendants to this claim at all times were acting under the color of state law.

139.  Plaintiff had the following clearly established rights at the time of the complained of conduct.

A.  The right to be free from false arrest, false imprisonment, and malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

B.  The right to be free from discrimination by police under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. Section 1981.

140.  Defendants Tauti, Merchbaker, Meadville, Pennsylania and Allegheny College all knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

141.  The acts or omissions of these Defendants, as described herein, deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

142.  Defendants are not entitled to qualified immunity for the complained of conduct.

143.  Defendant Tauti was at all times relevant the policymaker for the City of Meadville, Pennsylvania and the Meadville, Pennsylvania Police Department, and in that capacithy established policies, procedures, customs, and or practices for the same.

144. Defendant Merchbaker was at times relevant the policymaker for Allegheny College and the Allegheny College Department of Public Safety, and in that capacity established policies, procedures, customs and/or practices for the same.

145. Defendants Tauti and Merchbaker developed and maintained policies, procedures, customs, and/or practices exhibiting deliberated indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

146. Defendants Tauti, Meadville, Pennsylvania, Merchbaker and Allegheny College have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

147. In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

148. The deliberately indifferent training and supervision provided by Defendant Chief of Police Michael J. Tauti, Defendant Meadville, Pennsylvania, Defendant

149. Sergeant William Merchbaker, and Defendant Allegheny College resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to the aforementioned Defendants and were the moving forces in the constitutional and federal violations and injuries complained of by Plaintiff.

150. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered emotional injury and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

151. On information and belief, Plaintiff may suffer lost future earnings and impaired earning capacities from the public stigma accruing from such a high profile publicized case, in amounts to be ascertained at trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, pre-judgment interest and costs as allowable by federal law.

152. Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. Section 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, which Defendants have no intention for voluntarily correcting despite obvious need and requests for such correction.

**COUNT VII**

**PUBLICITY PLACING PLAINTIFF IN A FALSE LIGHT AGAINST DEFENDANTS'
FIRST ASSISTANT DISTRICT ATTORNEY PAULA DIGIACOMO, KEVIN GUSHARD,
MEADVILLE TRIBUNE, AND COMMUNITY NEWSPAPER HOLDINGS, INC.**

153. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-152.

154. Defendant Paul DiGiacomo, the First Assistant District Attorney, for Crawford County, gave a public statement which was published by Defendant Meadville Tribune, in an article written by Defendant Keith Gushard, that even though the criminal case against Plaintiff had been withdrawn and dismissed, Plaintiff nevertheless remained a suspect in the investigation of the brutal April 7, 2019 assault against Rhett Happel at Julian's Bar in Meadville Pennsylvania.  The Meadville Tribune is owned by Defendant Community Newspaper Holdings Inc.

155.  Clearly, where there was overwhelming evidence presented to the Commonwealth establishing not only that Plaintiff was not the assailant, where the lone eyewitness accusing Plaintiff of the assault of Rhett Happel recanted and told police that Plaintiff was not the man that he saw attack Happel and numerous witnesses are poised to appear in court and testify that the actual assailant was Josiah Williams of Syracuse, New York and Plaintiff was not even at the scene of the incident, Ms. DiGiacomo's statement that Plaintiff is still a suspect for the assault of Rhett Happel is at best misleading if not an outright lie, which portrays Plaintiff in a false light, leading his peers at Allegheny College as well as the general public to wrongly believe that Plaintiff was the man who brutally assaulted Happel.

156.  The aforesaid actions of Defendants are unlawful under Pennsylvania law.

157.  Plaintiff, as a result of the unlawful acts of the Defendants, has suffered, and continues to suffer, substantial damages and irreparable harm as a result of being

placed in a false light before the public, which would be highly offensive to a reasonable person.

158.   Defendant's conduct in placing Plaintiff in a false light before the public, was malicious, shocking, and objectively unreasonable, which subjected Plaintiff to unwarranted humiliation and scorn.

159.   Plaintiff has suffered, and continues to suffer, substantial damages and irreparable harm as a result of the confusion caused by being placed in a false light before the public which would be highly offensive to a reasonable person.

160.   Defendants' reckless and maliciousness in casting Plaintiff in a false light entitles him to compensatory damages, punitive damages, and such other relief as the Court shall deem just and proper.

### COUNT VIII

**Publicity Placing Plaintiff in False Light against Defendants Allegheny College and Sergeant William Merchbaker**

161.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-150.

162.   On April 15, 2019,Sergeant William Merchbaker, the Director of Public Safety for Allegheny College interrupted Plaintiff's Philosophy lecture and detained Plaintiff and removed him for class in order to deliver him to the Allegheny Police Department which would, subsequently, arrest Plaintiff and charge him with Aggravated Assault, **18 Pa.C.S.A. Section 2702(a)**, for beating Rhett Happel in Julian's Bar, after a putative eyewitness identified Plaintiff as the assailant from a facebook photo, only because Plaintiff was African-American and was seen in the

photo with a white male observed at the scene of the assault, even though as the

suspect was described by witness as having braids, Plaintiff did not have braids,

163. Less than a month later, the criminal case against Plaintiff would be

withdrawn by the Commonwealth because of a lack of evidence, where the

eyewitness recanted his accusation that he saw Plaintiff assault Rhett Happel, and

a substantial likelihood that the assailant was Josiah Williams of Syracuse, New

York, who was observed by numerous witnesses at the scene, and actually has

braids in his hair.

164. Clearly, arresting Plaintiff while he was attending class at Allegheny College,

where he was innocent of the allegation that he had assaulted Rhett Happel had

the effect of placing Plaintiff in a false light before the public.

165. As a result of the illegal detention of Plaintiff by Sergeant Merchbaker,

Plaintiff has suffered, and continues to suffer, substantial damages and irreparable

harm as a result of being placed in a false light before the public which would be

highly offensive to a reasonable person.

166. Defendants' reckless and malicious conduct in casting Plaintiff in a false light

entitles him to compensatory damages, punitive damages, and such other relief as

the Court may deem just and proper.

## COUNT IX

**Invasion of Privacy by way of an unreasonable intrusion by Defendants
Meadville Tribune, Community Holdings, Inc., and Keith Gushard**

167. Plaintiff re-alleges and incorporates by reference the allegations contained

in paragraphs 1-166.

168. In his Meadville Tribune Article depicting Plaintiff as the man who assaulted Rhett Happel, Defendant Keith Gushard published Plaintiff's home address in Upper Marlboro, Maryland.

169. Defendant Gushard's publication of Plantiff's home address in conjunction with an article that he had committed a heinous felonious assault againt an unsuspecting person was a patently egregious intentional intrusion upon the seclusion of Plaintiff's private concerns which is highly offensive offensive to a reasonable person, clearly calculated to cause mental suffering, shame and humiliation to a reasonable person.

170. Defendants' conduct in intruding upon Plaintiff's seclusion of private concerns was malicious, shocking, and objectively unreasonable, which subjected Plaintiff to unwarranted humiliation and scorn.

171. Plaintiff has suffered, and continues to suffer, substantial damages and irreparable harm as a result of the confusion caused by such an unwarranted intrusion upon his personal privacy, which would be highly offensive to a reasonable person.

172. Defendants' reckless and maliciousness in intruding upon Plaintiff's private concerns entitles him to compensatory damages, punitive damages, and such other relief as the Court shall deem just and proper.

## COUNT X

**Invasion of Privacy by way of unreasonable intrusion by Defendant
First Assistant District Attorney Paula DiGiacomo**

173. Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-172.

174.    Following the Commonwealth's decision to nolle prosse Plainitff's criminal case, Defendant First Assistant District Attorney Paula DiGiacomo reported to Keith Gushard that notwithstanding the decision of her office to withdraw the charges against Plaintiff, Plaintiff was still a suspect for he assault on Rhett Happel.

175.    Defendant DiGiacomo's reporting that Plaintiff remained a suspect for the assault of Rhett Happel was an egregious intrusion upon the seclusion of Plaintiff's private concerns, which is highly offensive to a reasonable person, clearly calculated to cause mental suffering, shame and humiliation to a reasonable person.

176.    Defendant DiGiacomo's intrusion upon Plaintiff's seclusion of private concerns was malicious, shocking, and objectively unreasonable, which subjected Plaintiff to unreasonable humiliation and scorn.

177.    Plaintiff has suffered and continues to suffer substantial damages and irreparable harm as a result of the confusion caused by such an unwarranted intrusion upon his personal privacy, which would be highly offensive to a reasonable person.

178.    Defendant DiGiacomo's reckless and maliciousness in intruding upon Plaintiff's private concerns entitles him to compensatory damages, punitive damages, and such other relief as the Court shall deem proper.

### COUNT XI

**Intentional Infliction of Emotional Distress against Defendants' Sergeant William Merchbaker, Allegheny College, First Assistant District Attorney Paula DiGiacomo, Kevin Gushard, Meadville Tribune and Community Newspaper Holdings, Inc.**

179. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-178.

180. By engaging in the acts alleged herein, Defendants Allegheny College, Merchbaker, DiGiacomo, Meadville Tribune, Kevin Gushard and Community Newspaper Holdings, Inc., engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiff to suffer emotional distress.

181. As a direct, proximate and foreseeable result, Plaintiff suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Plaintiff.

182. The conduct of Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against Defendants for the purpose of punishment and for the sake of example.

## COUNT X

### Conversion against Defendant City of Meadville, Pennsylvania

183. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-182.

184. Subsequent to Plaintiff's arrest, Meadville police officers executed a search warrant at Plaintiff's Allegheny College dorm room.

185. As a result of execution of the search warrant, police recovered a ring which the Commonwealth believed was employed as a foreign object by Plaintiff in the assault of Rhett Happel.

186. After forensic testing it was determined that the ring was not part of the assault against Mr. Happel.

187. Plaintiff has requested that the ring be returned, but the Commonwealth has refused.

188. Defendant City of Meadville, Pennsylvania has seized Plaintiff's ring and converted the same to its own use, and has refused the property to Plaintiff.

189. Defendant Meadville, Pennsylvania's conduct in converting Plaintiff's ring to its own is reckless and malicious conduct which entitles Plaintiff to compensatory damages, punitive damages, and such other relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff respectfully requests

A.   Compensatory damages as to all defendants;

B.   Punitive Damages as to Defendants Frum, Merchbaker DiGiacomo, Tautin, and Gushard.

C.   Reasonable attorney's fees and costs as to all Defendants;

D.   Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

Respectfully submitted:

Earl Raynor, Esquire
PA Supreme Court I.D. No. 66849
1800 J.F.K. Boulevard
Third Floor
Box 103
Philadelphia, Pennsylvania 19103
(215)254-0299
Fax: (914)663-5116

*Counsel for Plaintiff*
*Kobe Pinkney*