IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KOBE PINKNEY | Docket No. 1:19-cv-00167 |
| Plaintiff | |
| | *Electronically Filed* |
| v. | |
| | |
| MEADVILLE PENNSYLVANIA;<br>POLICE CHIEF MICHAEL J. TAUTIN;<br>PATROLMAN JARED FRUM;<br>ALLEGHENY COLLEGE;<br>SERGEANT WILLIAM MERCHBAKER;<br>FIRST ASSISTANT DISTRICT<br>ATTORNEY PAULA DIGIACOMO;<br>MEADVILLE TRIBUNE;<br>COMMUNITY NEWSPAPER HOLDING,<br>INC. and KEITH GUSHARD | Magistrate Judge Richard A. Lanzillo |
| Defendants | JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF DEFENDANT PAULA DIGIACOMO'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**

AND NOW, comes Defendant, First Assistant District Attorney Paula DiGiacomo, by her attorneys, Marshall Dennehey Warner Coleman & Goggin and G. Jay Habas, Esquire, and in support of Defendant's Motion to Dismiss Counts VII, X and XI of Plaintiff's Amended Complaint against this Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

### I.   SUMMARY OF DEFENDANT'S ARGUMENTS

Plaintiff pleads that an affirmation by Crawford County, Pennsylvania Assistant District Attorney Paula DiGiacomo to an inquiry by the Meadville Tribune whether the Plaintiff was still a suspect in the investigation of an assault for which charges had been filed against him but later withdrawn is grounds for claims of invasion of his privacy and intentional infliction of emotional distress. Plaintiff's claims are legally deficient as a matter of law and should be dismissed as

they fail to identify any proper basis to obtain such relief, and the Defendant is immune from liability as a high public official and under the Political Subdivision Tort Claims Act.

## STATEMENT OF FACTS

The relevant facts for purposes of Defendant Paula DiGiacomo's (hereinafter "Defendant" or "DiGiacomo") Motion to Dismiss are as follows.

On April 11, 2019, the Plaintiff was arrested by Defendant Jared Frum, a Patrolman with the Meadville, Pennsylvania Police Department, and charged with Aggravated Assault, Simple Assault, Harassment and Disorderly Conduct, based on eyewitness identification of the Plaintiff as the person who had assaulted and severely injured Rhett Happel on April 7, 2019 at a bar in Meadville. *Amended Complaint,* ECF 50 at ¶s 17-36 and Exhibit A thereto.

A preliminary hearing on the criminal charges against the Plaintiff was set for May 22, 2019, but the charges were withdrawn in advance thereof on May 14, 2019. ECF 50, ¶38. Details of the charges were reported in the Meadville Tribune in an article by Defendant Keith Gushard on May 16, 2019. ECF 50, ¶39. Defendant Gushard interviewed DiGiacomo, the First Assistant District Attorney for Crawford County, for the piece. She verified that the charges against Plaintiff were withdrawn, and also confirmed when questioned that Plaintiff was still a suspect in the crime. ECF 50, ¶s 52-56.

Plaintiff's Amended Complaint, Exhibit H, includes the newspaper article identifying the exact statement attributed to DiGiacomo therein, with the specific statements written in the article involving Defendant DiGiacomo set forth as follows:

> "On Wednesday, Paula DiGiacomo, first assistant district attorney for Crawford County, said the charges were withdrawn 'until the rest of the case can be investigated.'"
>
> "Yes, 'DiGiacomo said when asked if Pinkney was still a suspect.'"

2

The above statement is the sole basis for the Plaintiff's claims against Defendant DiGiacomo for false light (Count VII), intrusion upon seclusion invasion of privacy (Count X) and intentional infliction of emotional distress (Count XI).

## II. ARGUMENT

### A. Legal Standard for Motion to Dismiss

The standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is well-established. A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and cannot rely on "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Bell Atlantic Corp. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 127 S.Ct. 1937, 1949 (2009).

The analysis that is required in evaluating whether an Amended Complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6) includes the elements a plaintiff must plead to state a claim, whether there are allegations that are no more than conclusions and thus not entitled to the assumption of truth, and whether well-pleaded factual allegations plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### B. Plaintiff Fails to State a Claim for False Light Invasion of Privacy Against Defendant DiGiacomo (Count VII)

A claim for invasion of privacy alleging that publicity placing a person in a false light is actionable only if the plaintiff establishes that the publication is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless disregard of its falsity. *See Restatement (Second) of Torts*, §652E, comments a, c and d; *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. 1993). *See also Time, Inc. v. Hill*, 385 U.S. 374, 389, 87 S.Ct. 534 (1967) (extending actual malice standard – requiring that the defendant "acted with

knowledge of falsity of the statement or in reckless disregard as to the truth or falsity" – to claims of false light invasion of privacy under state statute).

The falsity that this cause of action is concerned with is a "major misrepresentation" of a person's "activities, history or character" that could reasonably be expected to "offend a reasonable person seriously." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997) (article must involve "publicity, given to private facts which are not of legitimate concern to the public.") *Restatement (Second) of Torts*, §652E, comment c.

In this case, the Plaintiff's Amended Complaint, just as the original Complaint, fails to state a cause of action against Defendant DiGiacomo for allegedly placing the Plaintiff in a false light for the statements cited in the newspaper article concerning the continued investigation of the crime for which charges were filed against him but later withdrawn.

First, Plaintiff does not allege that DiGiacomo's statement that Plaintiff remains a suspect in the assault was in fact false, involved a "major misrepresentation," and made with "knowledge of its falsity or in reckless disregard as to the truth or falsity." Plaintiff counsel asserts his client's innocence and claims prosecuting him is unjustified, but that does not meet the legal requirement that the statement in question about Plaintiff remaining a suspect was made recklessly, knowing it was in fact false, and misrepresented the truth.

Indeed, Plaintiff cannot meet this critical element of a false light claim as a matter of law. The apparent premise of the Plaintiff's claim against DiGiacomo is that the withdrawal of the criminal charges against him resulted in the case being "closed", thus he cannot remain a suspect. *Amended Complaint*, ECF 50, ¶52. As a result, Plaintiff contends, DiGiacomo's statement that was still a suspect in the crime somehow portrays him in a "false light."

Plaintiff fails to address the fact that the withdrawal of criminal charges, prior to a preliminary hearing, does not preclude the prosecution from refiling charges against a suspect.

4

Pennsylvania Rule of Criminal Procedure 544(A) specifically addresses a prosecutor's right to do so, providing:

> "When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, or when a grand jury declines to indict and the Amended Complaint is dismissed, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a Amended Complaint with the issuing authority who dismissed or permitted the withdrawal of the charges."

Pa. R.Crim.P. 544(a).

This rule is in accord with well-established authority that the Commonwealth may reinstitute charges that have been dismissed at a preliminary hearing. *See Comment to* Rule, citing *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936); *Commonwealth v. Thorpe*, 549 Pa. 343, 701 A.2d 488 (Pa. 1997).

Thus, while the criminal charges against Pinkney were withdrawn by the Commonwealth, the charges could be re-asserted pending further investigation, as accurately recited in the newspaper article in question. The only limitation in re-asserting any charges against the plaintiff here is the statute of limitations, *Thorpe, supra,* which does not apply since there is a two year statute for the charges originally filed for the April 7, 2019 incident (criminal assault and battery, disorderly conduct and harassment) 42 Pa. C.S.A. §5552(a), (b)(1).

Defendant DiGiacomo's identified affirmation of the newspaper reporter's inquiry whether Plaintiff was still a suspect in the on-going investigation of the assault is not alleged to be a knowingly false or reckless statement, and does not state a claim for false light under the law. For example, in *Parks Miller v. Centre County,* 2016 U.S. Dist. LEXIS 62019 (M.D. Pa. 2016), *aff'd Miller v. County of Ctr.*, 702 Fed. Appx. 69 (3d Cir. 2017), the Court held that "truthful information about an ongoing investigation" would not be highly offensive to a reasonable person as a matter of law in dismissing a claim of false light invasion of privacy. *Id.*

5

at * 31. That case involved a District Attorney who was accused of forging a judge's order which resulted in a Grand Jury investigation where county officials publicly commented about the case. In the plaintiff's lawsuit alleging false light, the Court found that defendants' public statements about the DA and investigation of her were "truthful, concise and not selective," and thus did not state a claim for false light. *Id.*

This case is also similar to the situation in *Minor v. Cumberland Twp.*, 2015 U.S. Dist. LEXIS 130347 (W.D. Pa. 2015), which involved the plaintiff being arrested and charged with various crimes in front of her children, which were ultimately dismissed, then suing the arresting officers and Township on a number of causes of action including invasion of privacy – false light. In granting the defendants' motion to dismiss this claim, the Court noted various deficiencies in the pleading including that plaintiff did not identify facts that defendants "*selectively* printed or broadcasted true statements in a manner creating a false impression," and that the mere report of her arrest did not put her in a false light. *Id.* at 7. (Emphasis in original) As to the latter, the Court explained that "to permit such a claim would prevent any reports of an arrest, regardless of whether the suspect is subsequently exonerated, and would allow anyone who is arrested" to bring such a claim. *Id.*

The allegations in the Amended Complaint here against Defendant DiGiacomo asserting false light based on her truthful, limited response to a reporter's inquiry regarding the withdrawal of the criminal charges against the plaintiff and if he remained a suspect in the crime are legally and factually deficient to state a proper cause of action. That there may be a continuing investigation of the Plaintiff – despite his protests of innocence, does not establish a violation of privacy by placing him in a false light, as there is no falsity or recklessness to the defendant's alleged statement. To hold otherwise, and permit the Plaintiff to pursue a claim against DiGiacomo, would allow what the Court in *Minor* cautioned against, namely permitting someone

who is the subject of an arrest and then the charges are withdrawn an avenue to sue the public official who responds to a news inquiry about whether the charges can be re-instated, where the law expressly gives the District Attorney the right to do so. In effect, the Plaintiff is seeking to use his claim here in an effort to preclude the District Attorney from proceeding with any further investigation of his involvement in the underlying assault, which this Court should not permit.

Plaintiff's claim against this Defendant also fails where the statement in question is one that is of "legitimate concern to the public." *Minor, supra,* at * 6, citing *Smith v. Borough of Dunmore*, 663 F.3d 176, 182 (3d Cir 2011), citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997). For instance, the Court in *Santillo v. Reedel*, 634 A.2d 264 (Pa. Super. 1993), held that police officials' confirmation of a newspaper report that the plaintiff, a former office seeking public office, had been the subject of an Amended Complaint of unwanted sexual advances toward a minor and had taken a polygraph was not actionable false light because the matter was one of public concern, and the disclosure of the facts of the charge and investigation were not falsely reported. *Id.* at 264.

Likewise, here, Assistant District Attorney DiGiacomo's confirmation of the news report that the charges against the plaintiff had been withdrawn by the police, but that the investigation was continuing and that Pinkney remained a suspect, are factual statements concerning a matter of obvious public concern given the event of the assault and its reporting in the local news media. The facts identified in the Amended Complaint point to the legitimate public concern with the assault and criminal prosecution of those persons who may have perpetrated the crime. Thus, the plaintiff's claim of false light invasion of privacy does not meet the elements of the law, and Count VII of the Amended Complaint against Defendant Paula DiGiacomo should be dismissed, with prejudice and on leave to further amend.

7

### C. The Invasion of Privacy Intrusion Upon Seclusion Count (Count X) Fails to Set Forth a Proper Claim against Defendant DiGiacomo

The Plaintiff's Amended Complaint contains one new claim against Defendant DiGiacomo – invasion of privacy involving intrusion upon seclusion. This claim has not been adopted by the Pennsylvania Supreme Court, however, the courts that have considered it have indicated that it is "extremely rare that the court finds a cognizable intrusion upon seclusion claim." *Thomson v. Bhatt*, 2014 Pa. D&C LEXIS 4125 (C.C.P. Allegheny County 2014).

The tort of invasion of privacy for intrusion upon seclusion was identified under *Restatement Second of Torts* §652 B. Under that Section, "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Liability for this claim is limited to when the intrusion involves a plaintiff's person or affairs either by: "physical intrusion into a place where the plaintiff has secluded himself, by use of the defendant's senses to overcome or overhear the plaintiff's private affairs, or some other form of investigation or examination into plaintiff's private concerns." *Harris by Harris v. V. Easton Publishing Co.*, 483 A.2d 1377 (Pa. Super. 1984). There can be no liability for such a claim unless "the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person." *Id.* at comment d.

As indicated by the Court in *Thomson, supra*, this cause of action is not well founded in the caselaw. For instance, a claim that a newspaper published facts concerning the private lives of an applicant for public welfare benefits and her family, was held not to state a cause of action and the Court dismissed such a claim. *See Harris*, 483 A.2d at 1377. In another case, *Chiarella v. Passa Antique*, 494 A.2d 1109 (Pa. Super 1985), the defendant obtained the plaintiff's medical

records and forwarded them to an insurance company that was challenging the plaintiff's personal injury action. The Superior Court affirmed the grant of summary judgment reasoning that the medical treatment cannot be deemed a substantial intrusion and the disclosure of hospital records did not cause mental distress to a reasonable person. *Id.* at 1114. Another case referenced was *Tagouma v. Investigative Consultant Services, Inc.*, 4 A.3d 170 (Pa. Super 2010). In that case, the Superior Court found no intrusion upon seclusion where a private investigator followed and obtained surveillance footage of a workers' compensation claimant practicing his faith at a place of worship. The Court found against the plaintiff on his invasion of seclusion claim. In *Thomson* the Court went on to recite many other examples where plaintiffs have failed to sustain claims of intrusion upon seclusion for disclosing private information. 2014 Pa. D&C LEXIS at *11.

In this case, Plaintiff cannot sustain a cause of action for intrusion upon seclusion as a matter of law. The Amended Complaint fails to identify any invasion by Defendant DiGiacomo into the Plaintiff's personal seclusion or affairs. All that is claimed is that she responded to a newspaper reporter's inquiry concerning the status of the criminal investigation of him as a suspect in the assault of the person at bar. The disclosure was a matter of public information regarding the dismissal of the charge, but that further investigation was ongoing and that he remained a suspect. There was no "intrusion upon seclusion" in any manner by this Defendant. Even more than those court decisions that did not find a cause of action under this theory of recovery, this case clearly does not involve any substantial intrusion into the Plaintiff's personal affairs in any manner. There was no revelation of private information of the Plaintiff, disclosure of personal affairs that were not public, or any revelation whatsoever of any intrusive matters involving the Plaintiff. Defendant DiGiacomo simply commented on the status of a criminal investigation, identifying that he remained a suspect in the case. As a matter of law, this Court

should find that the allegation of invasion of privacy – intrusion upon seclusion of affairs, is insufficient as a matter of law and should be dismissed, with prejudice.

To state a cause of action under this theory a plaintiff must show that an intrusion is "substantial and highly offensive to a reasonable person. *DeAngelo v. Fortney*, 515 A.2d 594, 495 (Pa. Super 1986). There is no such allegation here, as not only was there no intrusion, but any statement by Defendant DiGiacomo as to the status of the Plaintiff's criminal matters, could not be substantial or highly offensive in any manner. It was simply a disclosure of a fact, not an offensive statement in any manner. Plaintiff had no legitimate expectation of any privacy in the criminal matter, as he had been publicly revealed as a suspect where formal charges had been made against him. The discussion of the ongoing case did not involve any private, non-public matter. Moreover, a comment on the status of that case, was not offensive, but simply a matter of fact. Further, Defendant DiGiacomo conveyed information about the status of the case that was legitimately relevant to the public knowledge concerning the assault. The publicity that was generated from the news article was nothing more than a follow-up on prior reports concerning the case, and thus the Plaintiff could not have had any expectation in privacy concerning that investigation. On the whole, the claims in the Amended Complaint of invasion of privacy for seclusion upon personal affairs are wholly insufficient and cannot be maintained in this case. For all of these reasons, this claim should be dismissed, with prejudice.

### D. Plaintiff's Claim that Defendant DiGiacomo Intentionally Inflicted Emotional Distress (Count XI) is Deficient as a Matter of Law

The Plaintiff's final claim for relief against Defendant DiGiacomo is under a theory of intentional infliction of emotional distress. Initially, this claim should be dismissed since the Pennsylvania Supreme Court has not expressly adopted such a cause of action as provided for by Restatement (Second) of Torts, §46. *See Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d

10

988, 989 (Pa. 1987) ("this court has acknowledged, but has never had occasion to specifically adopt Section 46 as the law in Pennsylvania"); *Hoy v. Angelone*, 720 A.2d 745, 753 n.10 (Pa. 1998) (discussing *Kazatsky* and holding that " . . . we too leave to another day the issue of whether section 46 of the Restatement should be the law of Pennsylvania."); *Ford v. Isdaner*, 542 A.2d 137 (Pa. Super. 1988), *alloc. denied*, 554 A.2d 509 (Pa. 1988).

To the extent that such a cause of action is recognized, the Pennsylvania courts have insisted that in order to state a claim for intentional infliction of emotional distress a plaintiff must allege that the defendant "acted with intent which is tortious or even criminal, or that he had intended to inflict emotional distress, or even that his conduct has been characterized as 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy v. Angelone, supra,* 720 A.2d at 754. The Court must determine whether the plaintiff must meets the threshold requirement that the defendant's conduct is "extreme and outrageous," defined as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Small v. Juniata College*, 682 A.2d 350, 355 (Pa. Super. 1996) (quoting *Jones v. Nissenbaum, Rudolph and Seidner*, 368 A.2d 770, 773 (Pa. Super. 1976); *Hoy, supra*.

Plaintiff has not plead facts to meet the necessary elements of a claim for intentional infliction of emotional distress as to Defendant DiGiacomo, and based on the facts and circumstances that are alleged, plaintiff cannot meet the high pleading burden under the law.

In Count XI, Plaintiff alleges in a conclusory, summary manner that DiGiacomo and other defendants engaged in "outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiff to suffer emotional distress." ECF 50, ¶180. No further facts are set forth under the emotional distress count, with plaintiff relying upon the averment that this defendant's statement to the media that Pinkney was still a suspect in the assault as the basis for

this claim. This type of pleading is patently insufficient under the standards set forth by *Twombly* and *Iqbal*. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

Plaintiff's claim is further deficient in that there is no basis for this Court to find that the mere statement that he remains a suspect for a crime that has not been prosecuted is itself criminal, extreme and outrageous, intended to harm, and beyond all bounds of decency so as to allow recovery for the intentional infliction of emotional distress. As cited, DiGiacomo's affirmation that the plaintiff remained a suspect in the ongoing investigation is not alleged to set forth any untruthful, false point of information about the case. Nor could it, as refiling of criminal charges after initially withdrawn is expressly provided for under Criminal Rule 544(A), based upon further investigation. Plaintiff's disagreement with the prosecution of the case cannot, as a matter of law, be elevated to a valid claim for the intentional infliction of emotional distress by this defendant. *See Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 565 (E.D. Pa. 2000) (where Amended Complaint contains no allegations suggesting that defendant's conduct was "extreme and outrageous," based on publication of truthful, non-defamatory statement, claim dismissed).

Plaintiff's claim against Defendant DiGiacomo for intentional infliction of emotional distress is factually and legally deficient, therefore, it must be dismissed, with prejudice.

### E. This Defendant is Immune from Plaintiff's Claims as a High Public Official and under the Political Subdivision Tort Claims Act

All of the Plaintiff's claims against Defendant DiGiacomo are barred as a matter of law as this Defendant is absolutely immune from suit for the claims asserted under both the High Public Official immunity and the bar of the Political Subdivision Tort Claims Act.

The doctrine of high public official immunity is set forth by the Pennsylvania Supreme Court as follows:

> [T]he doctrine of absolute privilege for high public officials, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.
>
> \* \* \*
>
> [It is] designed to protect the official from the suit itself, from the expense, publicity and danger of defending the good faith of his public actions before the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discretion of public business and in full public knowledge of the facts and conduct of such business.
> *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996).

The alleged statement by Defendant DiGiacomo here was made pursuant to her duties and responsibility as a prosecutor involving the crime for which Pinkney was charged and which the District Attorney for Crawford County was prosecuting. ECF 50, ¶s 46, 50, 58. In determining whether a particular defendant is accorded immunity as a high public official, courts look to the duties and responsibilities of the person making the statement. *Montgomery v. Philadelphia*, 78, 140 A.2d 100 (Pa. 1958). Traditionally, the courts have maintained a liberal construction in determining whether an action falls within the official's duties. *Barto v. Felix*, 378 A.2d 927, 929 (Pa. 1977). The duties of DiGiacomo as a prosecutor involved in the criminal assault investigation accord her the protection of this immunity, where it is alleged that she spoke to the media in her official capacity about the recent withdrawal of charges against Pinkney and addressed the status of the on-going investigation. Her statements, although clearly not defamatory, fall within the privilege accorded to the office of the District Attorney to speak about such matters. *Id.*

There can be no dispute that a statement made by an Assistant District Attorney concerning the status or investigation of a pending criminal prosecution which the ADA is involved in falls under high public official immunity. *See McCormick v. Specter*, 275 A.2d 688 (Pa. Super. 1971) (District Attorney determined to be a high public official); *Pickering v. Sacavage*, 642 A.2d 555, 558 (Pa. Cmwlth. 1994) (District Attorney statements about criminal investigation including criticism of family of victim of suicide held to be absolutely privileged). That this privilege applies to DiGiacomo as an Assistant District Attorney in this case is clear based on the decision of *Durham v. McEllyn*, 772 A.2d 68 (Pa. 2001).

In *Durham*, the Pennsylvania Supreme Court addressed whether an Assistant District Attorney is a high public official for purposes of applying the immunity in a case alleging that the ADA was liable for actions taken in prosecuting the plaintiff. The Court rejected the argument that an ADA was not a high public official, and applied the common law immunity, holding in relevant part:

> Assistant District Attorneys, however, are essential to district attorneys in fulfilling responsibilities of their high public offices, to wit, in carrying out the prosecutorial function. To subject district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous and most judgment-proof from vigorously performing their prosecutorial functions, and would inevitably result in criminals going unpunished. The fact that assistant district attorney, unlike their principal the district attorney, are not known for policy-making functions is not pivotal to the immunity determination. … the "high public official" umbrella of immunity has in many instances been extended to a wide range of public officials whose policy-making roles were not salient. While it is often the case that "high public officials" have policy-making functions, that is not the sole or overriding factor in determining the scope of the immunity. Rather, it is the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal. That interest dictates that assistant district attorneys be immune from suit.
>
> 772 A.2d at 70 (internal citations omitted).

*See also Gleeson v. Robson*, 2005 U.S. Dist. LEXIS 43310 * 101 (M.D. Pa. 2005) (citing *Durham* and other cases to find that Assistant District Attorney who drafted search warrants that lead to illegal seizure and Amended Complaint and affidavit of probable cause that lead to arrest warrant on charges that were later withdrawn held immune from claims of malicious prosecution, abuse of process and intentional infliction of emotional distress under high public official immunity.).

Plaintiff's claims here against DiGiacomo clearly fall under the High Public Officials immunity where the statements attributed to her were indisputably made in connection with her role as Assistant District Attorney in the prosecution of a crime. Dismissal of all claims against this Defendant pursuant to this motion is proper. *Phinisee v. Friewald*, 334 F.Supp.3d 650, 657 (E.D. Pa. 2018) (citing cases for proposition that courts may dismiss claim based on defenses that are obvious from the face of the pleading.); *Douris v. Schweiker*, 229 F.Supp.2d 391, 402 (E.D. Pa. 2002) (state law intentional tort claims against ADA for allegedly withholding exculpatory evidence held barred by absolute immunity as high public officials, motion to dismiss granted).

The Defendant is also immune from suit under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §8541. This statute provides that political subdivisions and local agencies, and the employees thereof, enjoy the protection of immunity "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. Section 8542 (a)(2) specifies that liability may be imposed on the local agency only for negligent acts, not intentional acts. *Petula v. Mellody*, 631 A.2d 762, 765 (Pa. Cmwlth. 1993); *Douris, supra*, 229 F.Supp.2d at 402.

15

Inasmuch as the claims against Defendant DiGiacomo here do not include any allegations of negligence, and assert only intentional torts, the immunity of the Political Subdivision Tort Claims Act claim applies to preclude the plaintiff's causes of action against this Defendant.

### III.   CONCLUSION

Defendant, Paula DiGiacomo, respectfully requests an Order from this Honorable Court granting her Motion to Dismiss the claims against her in Counts VII, X, and XI of the Amended Complaint, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By_____
G. Jay Habas
PA ID No. 55581
717 State Street, Suite 701
Erie, PA  16501
(814) 480-7802

LEGAL/125108242.v1

16

IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KOBE PINKNEY<br>　　　　Plaintiff<br><br>v.<br><br>MEADVILLE PENNSYLVANIA;<br>POLICE CHIEF MICHAEL J. TAUTIN;<br>PATROLMAN JARED FRUM;<br>ALLEGHENY COLLEGE;<br>SERGEANT WILLIAM MERCHBAKER;<br>FIRST ASSISTANT DISTRICT<br>ATTORNEY PAULA DIGIACOMO;<br>MEADVILLE TRIBUNE;<br>COMMUNITY NEWSPAPER HOLDING,<br>INC. and KEITH GUSHARD<br>　　　　Defendants | Docket No. 1:19-cv-00167<br><br>*Electronically Filed* |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Brief in Support of Motion to Dismiss Amended Complaint was duly served on all counsel of record and unrepresented parties on the 10th day of October, electronically or by mailing same to them at their designated offices by first class United States mail, postage prepaid, or by personal service at their respective offices.

| | |
|---|---|
| Earl Raynor, Esquire<br>1800 J.F.K. Boulevard, Third Floor<br>Box 103<br>Philadelphia, PA  19103<br>*Attorney for Plaintiff* | Patrick M. Carey, Esquire<br>G. Michael Garcia, Esquire<br>717 State Street<br>Suite 701<br>Erie, PA  16501<br>*Attorneys for Defendants Meadville,*<br>*Pennsylvania, Police Chief Michael Tautin,*<br>*Patrolman Jared Frum* |
| Charles Kelly, Esquire<br>John A. Marty, Esquire<br>One PPG Place, 30th Floor<br>Pittsburgh, PA  15222<br>*Attorneys for Defendants Meadville*<br>*Tribune, Community Newspaper*<br>*Holding, Inc. and Keith Gushard* | Jeffrey M. Weimer, Esquire<br>Brian J. Willett, Esquire<br>225 Fifth Avenue<br>Pittsburgh, PA  15222<br>*Attorneys for Defendants Allegheny College*<br>*and William Merchbaker* |

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By_____
       G. Jay Habas