IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KOBE PINKNEY | CIVIL ACTION |
| Plaintiff | NO. 1:19-cv-00167-RAL |
| v. | |
| MEADVILLE, PENNSYLVANIA;<br>POLICE CHIEF MICHAEL J. TAUTIN;<br>PATROLMAN JARED FRUM;<br>ALLEGHENY COLLEGE;<br>SERGEANT WILLIAM MERCHBAKER;<br>FIRST ASSISTANT DISTRICT<br>ATTORNEY PAULA DIGIACOMO;<br>MEADVILLE TRIBUNE;<br>COMMUNITY NEWSPAPER HOLDING,<br>INC.; and KEITH GUSHARD | |
| Defendants | JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) OR ALTERNATIVE MOTION
FOR SUMMARY JUDGMENT**

AND NOW, come the Defendants, City of Meadville, Pennsylvania, Police Chief

Michael J. Tautin and Patrolman Jared Frum, by and through their attorneys, Marshall Dennehey

Warner Coleman and Goggin, Patrick M. Carey, Esquire, and G. Michael Garcia II, Esquire, and

in support of the accompanying Motion to Dismiss, submit the following Brief in Support

thereof, aver as follows:

**I.     FACTUAL BACKGROUND AND CLAIMS RAISED BY PLAINTIFF**

Kobe Pinkney's ("Plaintiff") instant civil rights Complaint arises from a series of events

following the investigation of an assault which occurred in the early morning hours of April 7,

2019, at Julian's Bar in the City of Meadville, Pennsylvania. *ECF No. 50, ¶¶s 17 – 20; See also
Exhibit 1.*

At approximately 1:30 A.M. on April 7, 2019 the Defendant, Patrolman Jared Frum of the City of Meadville Police Department encountered several males walking in the vicinity of the Meadville Academy Theatre.  Those individuals were assisting Rhett Happel who appeared to have sustained obvious, serious, injuries to his face following a physical assault at nearby Julian's Bar in the City of Meadville, Pennsylvania.  *ECF No. 50, ¶¶s 17-18; See also Exhibit 1.*

On April 10, 2019, Patrolman Frum obtained a recorded statement at the Allegheny College Public Safety building from an eye-witness who stated that he personally observed an African American male, approximately six feet tall with braided hair, approach Rhett Happel who was waiting in line for the bathroom at Julian's Bar, tap him on the shoulder, and then punch him one time in the face.  The assailant left the bar immediately after the assault. *ECF No. 50, ¶¶s 22-24, See also Exhibit 1.*  The witness told Patrolman Frum that sometime after the assault, Rhett Happel's friend, Evan Haines, had sent him several pictures depicting two individuals: a white male, identified as Jared Shaw with another African American male.  The witness identified the African American male in the photos, Kobe Pinkney, as the man that assaulted Rhett Happel on April 7, 2019.  *ECF No. 50, ¶¶s 25-27; See also Exhibit 1.*  The eyewitness identified the black male, Kobe Pinkney, as the man that assaulted Rhett Happel on April 11, 2019.  *Id.*  The City of Meadville Police attempted to speak with Mr. Shaw, however he refused to cooperate.  *ECF No. 50, ¶¶s 31-33.*

On April 11, 2019, Patrolman Frum charged Plaintiff with one count each of Aggravated Assault, Simple Assault, Harassment, and Disorderly Conduct and a Warrant was issued for arrest.  Plaintiff was arrested at Allegheny College that same day.  *ECF No. 50, ¶34; See also Exhibit 1.*  Following Plaintiff's arrest, City of Meadville Police secured a search warrant for Plaintiff's dorm room at Allegheny College for purposes of obtaining a right believed to be worn on the night of the assault for forensic testing.  *ECF No. 50, ¶54, See also Exhibit 2.*  Following

the filing of criminal charges against the Plaintiff and prior to his preliminary hearing on those charges, Plaintiff alleges that "numerous eye-witnesses came forward and claimed that Plaintiff did not assault Rhett Happel and had not even been at Julian's bar on the night of the assault." *ECF No. 50, ¶40.* In fact, the alleged eyewitnesses were discovered through an independent investigation conducted by Plaintiff's counsel, Earl Raynor, information which was communicated to the City of Meadville Police on May 2, 2019. *See Exhibit 3.* Plaintiff alleges that two of the "eye-witnesses" identified another African American male, Josiah Williams, who allegedly wore braids in his hair as the assailant. *ECF No. 50, ¶¶s 41, 45-46; See also Exhibit 3.* The following day, Plaintiff's mother provided additional information to the City of Meadville Police purported to establish an alibi for Plaintiff. *ECF No. 50, ¶47; See also Exhibit 4.* Thereafter, Mr. Raynor obtained two additional "witness" statements purported to establish Plaintiff's alibi as well as implicating Josiah Williams as the assailant. *ECF No. 50, at ¶¶s 50-51, See also Exhibits F & G to Plaintiff's Amended Complaint.* Neither statement obtained by Mr. Raynor was produced to the City of Meadville Police. *ECF No. 50, ¶52.*

According to the Plaintiff, the witness that provided Patrolman Frum with a statement identifying him as the assailant "recanted his identification of Plaintiff and admitted that Plaintiff was not the man he saw attack Rhett Happel." *ECF No. 50, ¶53.* On May 15, 2019, seven days prior to Plaintiff's scheduled preliminary hearing on May 22, 2019, the criminal charges against the Plaintiff were withdrawn by the "Commonwealth." *ECF No. 50, ¶52; See also Exhibit 1.*

In Counts II, III, and IV of the Complaint, Plaintiff alleges that Patrolman Frum, both individually and in his official capacity, violated his Fourth Amendment rights under the United States Constitution by falsely arresting (Count II), falsely imprisoning (Count III), and engaging in the malicious prosecution (Count IV) of the Plaintiff without probable cause. *ECF No. 1, ¶¶s 78-114.* At Count V, Plaintiff alleges that Patrolman Frum, both individually and in his official

capacity, violated Plaintiff's Fourteenth Amendment due process rights by engaging in a racially motivated and discriminatory arrest of the Plaintiff. *Id. at ¶¶s 115-134*. At Count VI of Plaintiff's Complaint, he asserts a <u>Monell</u> claim against the Defendant City of Meadville and Police Chief Tautin, among other defendants, alleging that their failure to enact, enforce, or otherwise implement unidentified policies, procedures, customs, training and supervision which resulted in the aforementioned violations of the Plaintiff's civil rights. *Id. at ¶¶s 135-142*. Finally, at Count X of Plaintiff's Complaint, he asserts a claim of conversion against the City of Meadville relating to the confiscation of Plaintiff's property, specifically a ring that was recovered pursuant to a duly authorized search warrant for purposes of the aforementioned criminal investigation. *Id. at ¶¶s 173-178*.

## II.   BASIS FOR DISMISSAL OF CLAIMS RAISED BY PLAINTIFF

The moving Defendants are entitled to dismissal of the claims raised by the Plaintiff in this matter for the following reasons:

  a.  Plaintiff has failed to state a claim or set forth a cause of action for false arrest under the Fourth Amendment at Count II of his Complaint because Patrolman Frum's actions were supported by probable cause;

  b.  Plaintiff has failed state a claim or set forth a cause of action for false imprisonment under the Fourth Amendment at Count III of his Complaint because Patrolman Frum's actions were supported by probable cause;

  c.  Plaintiff has failed to state a claim or set forth a cause of action for malicious prosecution under the Fourth Amendment at Count IV of his Complaint because Patrolman Frum's actions were supported by probable cause;

  d.  Plaintiff has failed to state a claim or set forth a cause of action for Equal Protection under the Fourteenth Amendment and 42 U.S.C. § 1981 at Count V of his Complaint;

  e.  Plaintiff has failed to state a <u>Monell</u> claim against the City of Meadville or Police Chief Michael Tautin because he has failed to identify any policy, practice, custom, or lack thereof, that violated his constitutional rights;

  f.  Plaintiff's state law claim for conversion at Count X fails because Plaintiff has failed to plead or otherwise prove that he has exhausted his adequate post-deprivation remedy in state court for return of the subject property;

  g.  Plaintiff has failed to establish the personal involvement of Police Chief Michael J. Tautin;

      h.  Defendant Frum is entitled to Qualified Immunity; and

      i.  Amendments to Plaintiff's Complaint would be futile.

## III.   ARGUMENT

### A.  Standard for Ruling on Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d. Cir. 1993). When ruling on a defendant's motion to dismiss, a judge must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n, 894 F.3d 509, 526-27 (3d. Cir. 2018). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 US. 662, 678 (2009) *quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to establish plausible allegations. Id., at 644 *citing* Twombly, 550 U.S. at 555. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id. at 662, 678 *citing* Twombly, 550 U.S. at 544, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." Id., *citing* Twombly, 550 U.S. at 556.

Following Twombly/Iqbal, a District Court should the following three-step approach when ruling on a defendant's motion to dismiss:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions, are
> not entitled to the assumption of truth.' Finally, 'where there are
> well-pleaded factual allegations, a court should assume their

> veracity and then determine whether they plausibly give rise to an
> entitlement for relief.

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) *quoting* Santiago v.
Warminster Twp., 629 F.3d 121, 130 (3d. Cir. 2010).

This determination is a "context-specific task that requires the reviewing court to draw on

its own judicial experience and common sense." Iqbal, 556 U.S. at 679.

### B.  Motion for Summary Judgment

In the alternative, the Defendants move for summary judgment under Fed. R. Civ. P. 56

and respectfully request that all of the constitutional claims against them be dismissed.  Federal

Rule of Civil Procedure 56 states in relevant part that "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A plaintiff must "point to

concrete evidence in the record that supports each and every essential element of his case" to

survive summary judgment.  Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).  This

Court may in its discretion consider the exhibits attached to defendant's motion to dismiss and

treat, either in whole or in part, the motion to dismiss as a motion for summary judgment under

Federal Rule of Civil Procedure 56.  Hyldahl v. Denlinger, 661 Fed. Appx. 167 (3d Cir. 2016)

*citing* Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992); *See also* Wardell v. City of

Erie, *2015 U.S. Dist. LEXIS 141687 (*W.D. Pa. 2015*).*  A "party will not be able to withstand a

motion for summary judgment merely by making allegations; rather the party opposing the

motion must go beyond its pleading and designate specific facts by use of affidavits, depositions,

admissions, or answers to interrogatories showing there is a genuine issue for trial."  In re IKON

Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002). Lastly, "[The] summary judgment

process presupposes the existence of an adequate record, [and] courts are obliged to give a party

opposing summary judgment an adequate opportunity to obtain discovery[.]  However, there is

no obligation to grant discovery when the information sought would not have precluded summary judgment." Hyldahl, 661 Fed. Appx. at 172 (internal quotations omitted) *citing* Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007) and Downling v. City of Philadelphia, 855 F.2d 136, 139-40 (3d Cir. 1988).

### C. §1983 Actions

Section 1983 states, in pertinent part:

> Every person, who, under color of state statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof of deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.

Section 1983 is not a source of substantive rights but provides a vehicle by which violations of federal law committed by state actors can be vindicated. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Thus, a plaintiff asserting a civil rights violation under §1983 must establish (1) the deprivation of a right secured by the United States Constitution or federal law; and (2) that the alleged violation was committed by a person acting under color of state law. Kneipp, 95 F.3d at 1204 (*quoting* Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### D. Fourth Amendment Claims

Plaintiff's §1983 claims at Counts II (false arrest), III (false imprisonment), and IV (malicious prosecution) are entirely premised on a theory that Patrolman Frum violated the Fourth Amendment's proscription against unreasonable seizures because Patrolman Frum lacked probable cause to initiate criminal proceedings against him. *ECF No. 50, ¶¶s 57, 58, 60, 61, 80, 90, 105.* Importantly, Plaintiff does not claim that Patrolman Frum made any false statements or

7

material omissions in the affidavit of probable cause in this matter.[1]  Rather, Plaintiff's claims

against Patrolman Frum are entirely premised upon his alleged "willful [and] reckless" failure to

investigate.  *ECF No. 50, ¶¶s 58, 60, 80, 81, 82, 108, 110.*[2]

     The existence of probable cause is an essential element of both false arrest/false

imprisonment[3] and malicious prosecution[4] claims, and such claims cannot proceed if probable

cause existed to initiate criminal proceedings.  Swope v. City of Pittsburgh, 90 F. Supp. 3d 400,

at 406 (W.D. Pa. Dec. 1, 2014).  "Probable cause exists whenever reasonably trustworthy

information or circumstances within a police officer's knowledge are sufficient to warrant a

person of reasonable caution to conclude that an offense has been committed by the person being

arrested."  United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).  It has long been

understood that "probable cause to arrest requires more than mere suspicion and the law

recognizes that probable cause determinations have to be made 'on the spot' under pressure and

do 'not require the fine resolution of conflicting evidence that a reasonable doubt or even a

preponderance standard demands.'"  Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) *citing*

---

[1] Typically, Fourth Amendment claims asserting a lack of probable cause are premised upon alleged false statements or material omissions in an affidavit of probable cause.  A claim asserting false statements or material omission in an affidavit of probable cause requires a court to to evaluate first, whether an officer "knowing and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant" and second, that "such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).  "Absent false statements or material omissions in the affidavit of probable cause, there is no basis for causes of action for false arrest and false imprisonment predicated on lack of probable cause." Craig v. Collins, 2013 U.S. Dist. LEXIS 133248, at *17 (E.D. Pa. Sept. 17, 2013).

[2] Arguably, Plaintiff's claims are more appropriately considered to be a "failure to investigate" claim, which requires a showing that a police officer acted intentionally, or recklessly, in a manner that shocks the conscience, in failing to investigate. Eckman v. Lancaster City, 742 F. Supp. 2d 638, 653 (E.D. Pa 2010) *aff'd,* 515 F. App'x 93 (3d Cir. 2013).

[3] To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) there was an arrest; and (2) the arrest was made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).  A claim for false imprisonment overlaps with a claim for false arrest. Wallace v. Kato, 549 U.S. 384, 127 (2007).  Therefore, "where an officer lacks probable cause to make an arrest there can be a Fourth Amendment claim for false imprisonment based on the detention pursuant to the arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).

[4] A claim for malicious prosecution requires a showing that: (1) the defendant initiated criminal proceedings; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Dibella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).

Gerstein v. Pugh, 420 U.S. 103, 121 (1975). A court is permitted to conclude that probable

existed as a matter of law if the evidence viewed in favor of the non-moving party "reasonably

would not support a contrary factual finding." Craig v. Collins, 2013 U.S. Dist. LEXIS 133248,

at *21 *citing* Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003). "The issue is not his

innocence or guilt." Craig, at *14-15 *citing* Hill v. California, 401 U.S. 797 (1971).

Only the information available to the officer at the time of the swearing of the affidavit is

relevant to the court's analysis. Dempsey v. Bucknell Univ., 834 F.3d 457, 471 (3d Cir. 2016).

"When an officer has received his information from some person - normally the putative victim

or an eye-witness - who it seems reasonable to believe, is telling the truth, he has probable

cause." Waters v. Chetenham Twp., 700 F. App'x 149, 153 (3d Cir. 2017) *citing* Grimm v.

Churchill, 932 F.2d 674, 675 (7th Cir. 1991); *See also* Merkle v. Upper Dublin Sch. Dist., 211

F.3d 782 (3d Cir. 2000); *See also* Sharrar v. Felsing, 128 F.3d 810, 818-19 (3d Cir. 1997). Once

an arresting officer has a reasonable basis to believe there is probable cause, he is not

constitutionally required to investigate independently every claim of innocence. Waters, 700

Fed. App'x at 153 – 154. Likewise, a police officer's failure to investigate a suspect's alibi does

not negate the probable cause so long as the initial determination was itself reasonable. Walker

v. Spiller, 54 F. Supp. 2d 421, 426 (E.D. Pa. 1999).

The undisputedly authentic documents attached to Defendant's instant Motion to Dismiss

Plaintiff's First Amended Complaint provide the necessary context from which the Court must

access Patrolman Frum's determination of probable cause in this matter. *See* Merkle v. Upper

Dublin Sch. Dist., 211 F.3d at 790 (3d Cir. 2000)(A credible report from individual who

witnessed the alleged crime is sufficient to establish probable and an officers decision not to

interview additional witness was not an unconstitutional omission). When viewed in conjunction

with the factual allegations contained in Plaintiff's First Amended Complaint, it is apparent that

Plaintiff's arguments concerning Patrolman Frum's determination that probable cause existed are more appropriately considered defenses to those alleged crimes rather than a basis for finding that Officer Frum lacked probable cause in the first place. *See* <u>Swope</u>, 90 F. Supp. 3d 400, (W.D. Pa. Dec. 1, 2014)(rejecting arguments against a finding of probable cause that were "more in the nature of a defense to those crimes rather than a basis for finding that [officer's] lacked probable cause in the first place).

Here, on April 10, 2019, three days after Rhett Happel's assault, an eyewitness who was standing near to Mr. Happel in line for the bathroom at Julian's Bar on the evening of April 7, 2019, came forward to provide a recorded statement to Patrolman Frum indicating he witnessed the assault. *ECF No. 50, ¶¶s 22-24; See also Exhibit 1.* The eyewitness provided a physical description of the assailant as being an African American male, approximately six feet tall with braided hair. *ECF No. 50, ¶23; See also Exhibit 1.* The eyewitness further reported that after striking Happel, the assailant walked to the tavern side of the bar and was not seen afterwards. *ECF No. 50, ¶42, See also Exhibit 1.* Patrolman Frum learned that the eyewitness identified Plaintiff as the assailant after being shown several pictures *by one of Mr. Happel's friend*s depicting the Plaintiff with another individual named Jared Shaw. *ECF No. 50, ¶¶s 25, 27-28; See also Exhibit 1.* Importantly, Patrolman Frum did not omit or attempt to conceal this fact from his Affidavit of Probable Cause when he swore the contents of the affidavit before the Magisterial District Judge on April 11, 2019. *See Exhibit 1.* Furthermore, as Plaintiff himself concedes, the City of Meadville Police Department attempted to investigate Jared Shaw's potential involvement, however he invoked his right to counsel. *ECF No. 50, ¶31-33.* Also on April 11, 2019, the City of Meadville Police obtained a Search Warrant for Plaintiff's dorm room to retrieve a ring they believed Plaintiff wore on the night of the assault which could have

contributed to Mr. Happel's injuries. *Exhibit 2.* As of August 19, 2019, DNA testing had yet to be completed. *Exhibit 3.*

The aforementioned facts were those available to Patrolman Frum on April 11, 2019. It was not until on or about May 2, 2019, that the City of Meadville Police were provided with addition information about the April 7, 2019 assault. *Exhibits 4,5.* On May 2, 2019, Plaintiff's lawyer Earl Raynor, Esquire, sent correspondence to Assistant Chief Michael Stefanucci indicating that he had conducted his own "investigation" and interviewed potential witnesses who allegedly could identify the true assailant as well as corroborate an alleged alibi for Plaintiff on the night of April 7, 2019. *Exhibit 4.* The first witness, Brian Hill, allegedly viewed Mr. Happel arguing with another African American male, Josiah Williams, inside Julian's bar near where the alleged assault occurred. *Id.* According to Mr. Raynor, Mr. Hill did not observe the assault nor did he observe Josiah Williams with Jared Shaw. *Id.* According to Mr. Hill, the Plaintiff was not at bar on April 7, 2019. *Id.* The second alleged witness, Joe Hayes, likewise told Mr. Raynor that he observed Mr. Happel arguing with an individual named "Jo-Jo" inside of the bar near to where the assault occurred. *Id.* Mr. Hayes did not state he observed Jared Shaw. *Id.* Mr. Hayes also informed Mr. Raynor that Plaintiff was not at the bar the evening of the assault. *Id.* Contrary to Plaintiff's allegations contained in his First Amended Complaint, Mr. Raynor's May 2, 2019 letter undermines Plaintiff's assertion that Mr. Hill and Mr. Hayes could affirmatively identify Josiah Williams as the assailant. *ECF No. 50, ¶41.*

The following day, May 3, 2019, Plaintiff's mother sent follow-up correspondence to the City of Meadville Police Department regarding an April 24, 2019 meeting she had with Police concerning Plaintiff's alleged alibi. *Exhibit 5.* Plaintiff's mother provided the City of Meadville

Police with a receipt from McDonalds[5] at 1:00 A.M. on April 7, 2019, as well as Plaintiff's key fob entry log for his dormitory indicating he entered the dormitory at 1:17 A.M. *Exhibit 5, See also Exhibits B, C to Plaintiff's First Amended Complaint.*

As the Plaintiff's preliminary hearing approached, Plaintiff asserts two additional witnesses, Rosslin Watson and Jacob Reidenbach, came forward. *ECF No. 50, ¶50, 51.* On May 7, 2019, Mr. Raynor obtained an unsworn affidavit from Rosslin Watson purportedly establishing Plaintiff's alibi. *ECF No. 50, ¶51; See also Exhibit G.* On May 9, 2019, Mr. Raynor obtained a sworn affidavit from Jacob Reidenbach indicating that he observed Josiah Williams in a verbal confrontation with Mr. Happel and his friends outside of Julian's Bar *after the assault occurred*. *ECF No. 50, ¶50; See also Exhibit F.* According to Mr. Reidenbach, Josiah Williams uttered statements which constituted an admission to the assault. *Id.* The information provided by Ms. Watson and Mr. Reidenbach was not passed along to the City of Meadville Police. *ECF No. 50, ¶52.* Lastly, Plaintiff baldy alleges without support and without any indication of when the events occurred that the original eyewitness "recanted his identification of Plaintiff and admitted that Plaintiff was not the man he saw attack Rhett Happel." *ECF No. 50, ¶53.* He also claims that DNA testing of the ring yielded negative results "exonerating" Plaintiff. *Id., ¶54.* Lastly, Plaintiff asserts that a videotape from the bar showed both "Rhett Happel and Josiah Williams, but did not include Plaintiff. *Id., ¶55.* Nonetheless, on May 15, 2019, charges were withdrawn[6] by the Commonwealth prior to Plaintiff's May 22, 2019 Preliminary Hearing. *ECF No. 50, ¶52; See also Exhibit 1.*

The evidence Plaintiff alleges Patrolman Frum failed to "investigate" was neither clearly exculpatory nor did it substantially undermine the account of the eyewitness who originally came

---

[5] The McDonalds restaurant Plaintiff allegedly visited is located at 1060 Park Avenue in the City of Meadville and is 0.3 three miles from Julian's Bar and Grill, located at 299 Chestnut Street in the City of Meadville.
[6] The Commonwealth of Pennsylvania may withdraw criminal charges against a Defendant without prejudice to bring the same or additional charges at a future date. *See* Pa.R.Crim.P. 544(a).

forward to police on April 10, 2019. With respect to the numerous witnesses identified by the

Plaintiff, none of those witnesses came forward to the City of Meadville Police nor did any of

them indicate that they personally observed the assault on April 7, 2019. In this regard,

Patrolman Frum was not constitutionally obligated to investigate their claims. Waters, 700 Fed.

App'x at 153 – 154. Likewise, Patrolman Frum was not constitutionally obligated to investigate

Plaintiff's purported alibi because it was not known to him prior to April 11, 2019 nor was it

certain, as it clearly placed Plaintiff near to Julian's Bar on the night of the assault. Walker, 54 F.

Supp. 2d at 426. With respect to the additional evidence cited by Plaintiff, it is evident that DNA

results from the ring were not available to the City of Meadville Police prior to April 11, 2019 or

May 15, 2019. Similarly, Plaintiff does not allege that the alleged videotape obtained from

Julian's Bar captured the alleged assault, only that it was purported to place Rhett Happel and

Josiah Williams within the bar. Even so, Patrolman Frum was not constitutionally obligated to

investigate the video. *See* Waters, 700 Fed. App'x at 153-154. Lastly, Plaintiff alleges that the

eyewitness ultimately recanted his statement at an undisclosed time which presumably led to the

withdrawal of criminal charges on May 15, 2019. The totality of the circumstances clearly does

not compel a finding that Patrolman Frum lacked probable cause on April 11, 2019 or that he

otherwise acted intentionally, recklessly, or in a manner that shocks the conscience in failing to

investigate. *See* Swope, *supra*; *See also* Craig, *supra*.

Simply stated, Plaintiff's argument fails to appreciate that when evaluating whether

probable cause exists, only the information available to the officer at the time of the swearing of

the affidavit is relevant to the court's analysis. Dempsey v. Bucknell Univ., 834 F.3d 457, 471

(3d Cir. 2016). Even viewing the totality of the circumstances prior to the May 15, 2019

withdrawal of criminal charges against the Plaintiff, there existed only one definitive eyewitness

account of the assault and Patrolman Frum's reliance on that account was wholly reasonable in

the absence of Jared Shaw's cooperation with police. *See* Waters v. Chetenham Twp., 700 F.

App'x 149, 153 (3d Cir. 2017) citing Grimm v. Churchill, 932 F.2d 674, 675 (7th Cir. 1991); See

also Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3d Cir. 2000); See also Sharrar v. Felsing,

128 F.3d 810, 818-19 (3d Cir. 1997). Moreover, on the record before the Court, it is apparent

that Patrolman Frum from never engaged in intentional, reckless, or conscious shocking behavior

to conceal or otherwise ignore clearly exculpatory evidence establishing Plaintiff's innocence.

*See* Craig, 2013 U.S. Dist. LEXIS 133248, at *27 *citing* Wilson v. Russo, 212 F.3d 781, 789 (3d

Cir. 2000)("Negligence is not actionable as a due process deprivation of a civil right").

Accordingly, because probable cause supported Plaintiff's arrest and prosecution, the causes of

action arising under the Fourth Amendment at Counts II, III and IV must be dismissed, with

prejudice.

### E.  Fourteenth Amendment Equal Protection Claim

At Count V of Plaintiff's Complaint he asserts alleges that Patrolman Frum's actions

were "racially motivated" and therefore deprived Plaintiff of the equal protection and benefit of

law in violation of Plaintiff's Fourteenth Amendment Rights under the United States

Constitution and 42 U.S.C. §1981. *ECF No. 50, ¶¶s 115 - 134.* In order to bring a successful

§1983 claim for denial of equal protection, a plaintiff must prove the existence of purposeful

discrimination.  Keenan v. City of Phila, 983 F.2d 459 (3d Cir. 1992).  A plaintiff must

demonstrate that they received different treatment from that received by other individuals

similarly situated. Id.  With respect to potential "racial profiling" a plaintiff must prove that the

actions of officials (1) had a discriminatory effect and (2) were motivated by a discriminatory

purpose.  Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002).  "To prove discriminatory

effect, [the plaintiff has] to show that [he] is a member of a protected class and that [he] was

treated differently from similarly situated individuals in an unprotected class." Id. at 206.

It is undisputed that the Plaintiff, an African American male, is a member of a protected class. *ECF No. 50, ¶121.* In all other respects, Plaintiff's Complaint fails to adequately plead, let alone assert facts from which this Court could infer that Patrolman Frum was motivated by a discriminatory purpose or that Plaintiff was treated differently from similarly situated individuals. Plaintiff baldy asserts that "race was a motivating factor in the decision of Defendants to detain him without reasonable suspicion, arrest him without probable cause and maliciously prosecute him with false charges...merely because prior to the incident he took some Facebook photos with a white male that was observed with the assailant at the scene...Plaintiff in no way resembled the assailant, who unlike the Plaintiff had braids, and was only arrested because like the assailant Plaintiff is African-American" *ECF No. 50, ¶123.* Plaintiff purports to establish that he was treated differently than Jared Shaw, a white individual identified as a "person of interest" due to an incident that occurred the day before the assault of Mr. Happel. *ECF No. 50, ¶124.* While Plaintiff's assertion that he was treated differently than Mr. Shaw may be a sufficient comparison upon which his claim could rest, the allegations in his First Amended Complaint undermine this assertion. First and foremost, Plaintiff concedes that the City of Meadville Police attempted to ascertain information about the assault from Mr. Shaw, however he invoked his right to counsel. *ECF No. 50, ¶¶s 31-33.* Moreover, all of the alleged evidence cited by the parties in this matter identified an African-American male as the assailant. Accordingly, Jared Shaw is not a person "similarly situated" for purposes of Plaintiff's Fourteenth Amendment equal protection claim and therefore, Count V of Plaintiff's Complaint must be dismissed, with prejudice.

### F. Qualified Immunity - Patrolman Frum

Qualified Immunity is an affirmative defense for government officials subject to §1983 actions which operates to shield government officials from liability for civil damages so long as

their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.  Thomas v. Independence Twp., 463 F.3d 285 (3d Cir.

2006).  Qualified immunity provides "government officials breathing room to make reasonable

but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly

violate the law."  Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011); *See also* Swope, *supra*; Craig,

*supra*; Walker, *supra*.  Whether a government official is shielded by qualified immunity requires

a reviewing court to look to the "objective legal reasonableness" of the officials' actions alleged

to have violated the plaintiff's rights.  Anderson v. Creighton, 483 U.S. 635, 639 (U.S. 1987).

The Defendant's subjective motivations are not relevant to the Court's analysis, rather only those

facts known to the official at the time he/she acted are relevant.  Blaylock v. City of Philadelphia,

504 F.3d 405, 411 (3d Cir. 2007).  In determining whether a government official defendant is

entitled to qualified immunity, a court should engage in a two-step inquiry:

> [T]aken in a light most favorable to the party asserting the injury,
> do the facts alleged show the [officials] conducts violated a
> constitutional right?...If there would be no violation of a
> constitutional right under the facts alleged, the Court's inquiry
> ceases...However, if the facts alleged make a violation, the Court
> must ask whether the right was clearly established; in other words,
> the contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violated that right.

Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

For the reasons set forth previously, Patrolman Frum possessed probable cause to initiate

criminal proceedings against the Plaintiff on April 11, 2019.  Likewise, Patrolman Frum's

actions were objectively reasonable under the circumstances.  On April 10, 2019 three days after

the assault, a witness, who was standing near the victim on April 7, 2019, provided a recorded

statement Patrolman Frum detailing the assault and his identification of the Plaintiff as the

assailant. *See Exhibit 1.*  Though Jared Shaw was certainly a person of interest given the alleged

dispute that occurred between him and Mr. Happel the day before the assault as well as his

alleged proximity to the Plaintiff and victim on the night of the assault, he invoked his right to

counsel when contacted by the City of Meadville Police. These were the facts available to

Patrolman Frum on April 11, 2019, and his reliance on the eyewitness statement at that time was

wholly reasonable. The reasonableness of Patrolman Frum's actions is evident insofar as he did

not omit or otherwise misrepresent the circumstances by which the eyewitness identified the

Plaintiff when Frum drafted the Affidavit of Probable Cause submitted to the Magisterial District

Judge. Therefore, there is nothing in the record to indicate that Patrolman Frum was "plainly

incompetent" in initiating criminal proceedings in this case or that Patrolman Frum knowingly or

recklessly deprived Plaintiff of his rights by concealing exculpatory evidence or for failing to

investigate potential witnesses and their statements related to matters on the periphery of the

actual assault. For the same reasons as set forth in Swope, *supra*, Craig, *supra*, and Walker,

*supra*, Patrolman Frum is entitled to qualified immunity and the claims against him should be

dismissed, with prejudice.

### G. Monell Claim

At Count VI of Plaintiff's Complaint, he alleges that the City of Meadville and Chief of

Police Michael Tautin, among other defendants, implemented or followed "[D]eliberately

indifferent policies, practices, customs, training and supervision" which resulted in a violation of

Plaintiff's constitutional rights. *ECF No. 50, Count VI.* A municipality can be held liable under

§1983 only if plaintiff shows that the actions that were violative of his/her civil rights resulted

from implementation of a policy, ordinance or custom of the local government or were

committed by an official high enough in government so that the actions can fairly be said to

represent a government decision. Monell v. Department of Social Services, 436 U.S. 658, 694,

(1978).

17

Plaintiff must provide evidence that the government unit itself supported a violation of Plaintiff's constitutional rights. Bielevich v. Dubinon, 915 F.2d 845, 850 (3rd Cir. 1990); Monell 436 U.S. at 695. The United States Supreme Court in Monell held that a Civil Rights Complaint against a municipality or its agency must allege:

1. The existence of a custom or a policy of the municipality, which is of such long standing to have the force of law; and

2. That one of the municipality's employees violated the Plaintiff's civil rights while acting pursuant to this custom or policy. Id.

To establish municipal liability under Monell v. Department of Social Services, 436 U.S. 658, 56 L.Ed. 2d 611 (1978), a Plaintiff must *specifically identify* the challenged policy, practice or custom attributed to the municipality itself, and show a causal link between the execution of the policy, practice or custom and the injuries suffered. Coughenour v. City of Pittsburgh, 2017 U.S. Dist. LEXIS 162115 (W.D. Pa. Oct. 2, 2017) *citing* Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397 (1997)(emphasis added). In addition, Plaintiffs must present scienter-like evidence of indifference on the part of a particular policy maker or policy makers. Simmons v. City of Philadelphia, 947 F.2d 1042, 1060-61 (3rd Cir. 1991). "Absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or a failure to train." Id, 947 F.2d at 1063. A "plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L. Ed. 626 (1997).

Plaintiff asserts that Chief Tautin "was at all times relevant the policymaker for the City of Meadville, Pennsylvania" and "in that capacity established policies, procedures, customs, and or practices for the same." *ECF No. 50, ¶143.* Further, Plaintiff alleges Chief Tautin "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberated(sic)

18

indifference to the constitutional rights of citizens", "created and tolerated an atmosphere of lawlessness", "developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public." *ECF No. 50, ¶¶s 145-146.*

Count VI of Plaintiff's Complaint is nothing more than a formulaic recitation of the required buzz words underlying a <u>Monell</u> claim and therefore fails to meet the pleading requirements of <u>Twombly</u> and <u>Iqbal</u>. Plaintiff's Complaint is utterly devoid of any reference to a specific policy, practice, or custom attributable to the City of Meadville Police Department or Chief Tautin. Likewise, Plaintiff's conclusory allegations fail to show a causal link between the execution of a specific policy, practice or custom and the alleged injuries suffered. For the reasons set forth previously, Patrolman Frum had probable cause to initiate criminal proceedings against the Plaintiff and therefore Plaintiff cannot establish that he suffered any constitutional deprivation as a direct result of any policy, practice or custom of the City of Meadville or Chief Tautin. Accordingly, Count VI of Plaintiff's must be dismissed, with prejudice.

### H.  Lack of Personal Involvement – Police Chief Michael J. Tautin

It is well-settled that liability under §1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. <u>Gould v. Wetzel</u>, 547 Fed. Appx. 129 (3d Cir. 2013) *citing* <u>Arguenta v. U.S. Immigration and Customs Enforcement</u>, 643 F.3d 60, 73 (3d Cir. 2011). Thus, in order to sustain a civil rights action pursuant §1983, a plaintiff must show that each and every defendant played an "affirmative part" in the complained-of misconduct. <u>Iqbal</u>, 566 U.S. 662, 667 (2009); *See also* <u>Oliver v. Beard</u>, 358 Fed. Appx. 297, 300 (3d Cir. 2009).

Here, the only allegations relating to Chief Tautin are contained within Count VI of Plaintiff's Complaint discussed above. Plaintiff contends that Chief Tautin should be held liable

19

for the alleged constitutional deprivations under a theory of respondeat superior because he is responsible for overseeing the City of Meadville Police Department, and "was at all times relevant, the policymaker for the City of Meadville, Pennsylvania." *ECF No. 50, ¶143.* Plaintiff's Complaint is devoid of factual allegations establishing the personal involvement of Patrolman Tautin in any of the alleged constitutional violations in this matter and therefore he must be dismissed from this suit, with prejudice.

### I. State Law Claim – Conversion (Count X)– Adequate State Remedy

At Count X of Plaintiff's Complaint, he asserts that City of Meadville Police seized a ring belonging to the Plaintiff pursuant to a duly authorized search warrant for purposes of forensic testing and that the City of Meadville Police "converted the same to is own use, and has refused(sic) the property to Plaintiff." To the extent that Plaintiff's cause of action is asserting a potential Fourteenth Amendment violation for a deprivation of Plaintiff's "property," this cause of action at Count X is barred because there exists a constitutionally adequate state process for the return of property in this case. Hudson v. Palmer, 468 U.S. 517, 533 (1984); *See also* Revell v. Port Authority of N.Y. & N.J., 598 F.3d 128, 139 (3d Cir. 2010); *See also* McKenna v. Portman, 538 F. App'x 221, 224 (3d Cir. 2013).

The Pennsylvania Rules of Criminal Procedure provide an adequate state court remedy in this case. "Specifically, Pa.R.Crim.P. 588 provides a procedure for the return of property seized during criminal investigations and courts of this jurisdiction have consistently held that the rule provides an adequate post-deprivation remedy." Clouser v. Johnson, 2015 U.S. Dist. LEXIS 101257 (M.D. Pa. May 21, 2015) *citing* Guarrasi v. Cnty of Bucks, 2011 U.S. Dist. LEXIS 33036 (E.D. Pa. Mar. 29, 2011)(internal quotations omitted). Accordingly, Plaintiff has the availability of an adequate post-deprivation remedy in state court therefore Count X should be dismissed, with prejudice.

**J. Amendment to Plaintiff's Complaint would be futile**

The United States Court of Appeals for the Third Circuit has instructed that a District Court must permit a curative amendment to a Complaint which is vulnerable to dismissal under Federal Rule of Civil Procedure 12(b)(6) "unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3rd Cir. 2008).  An amendment is deemed to be futile if the Amended Complaint cannot withstand a renewed Motion to Dismiss. Shane v. Fauver, 213 F.3d 113, 116 (3rd Cir. 2000).  In the instant matter, amendments to Plaintiff's complaint would be futile and therefore not permitted.

WHEREFORE, for the reasons set forth herein, the Defendants Meadville, Pennsylvania, Police Chief Michael J. Tautin and Patrolman Jared Frum, respectfully request an Order from this Honorable Court granting their Motion to Dismiss or Alternative Motion for Summary Judgment in its entirety and dismissing all claims raised with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By: _____

Patrick M. Carey
PA ID #50171
G. Michael Garcia II, Esquire
PA ID #311594
717 State Street - Suite 701
Erie, PA  16501
(814) 480-7800

LEGAL/124271766.v1

21

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KOBE PINKNEY | CIVIL ACTION |
| Plaintiff | NO. 1:19-cv-00167-RAL |
| v. | |
| MEADVILLE, PENNSYLVANIA;<br>POLICE CHIEF MICHAEL J. TAUTIN;<br>PATROLMAN JARED FRUM;<br>ALLEGHENY COLLEGE;<br>SERGEANT WILLIAM MERCHBAKER;<br>FIRST ASSISTANT DISTRICT<br>ATTORNEY PAULA DIGIACOMO;<br>MEADVILLE TRIBUNE;<br>COMMUNITY NEWSPAPER HOLDING,<br>INC.; and KEITH GUSHARD | |
| Defendants | JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint was duly served on all counsel of record and unrepresented parties on the 14th day of October, 2019, electronically or by mailing same to them at their designated offices by first class United States mail, postage prepaid, or by personal service at their respective offices.

Earl Raynor, Esquire
1800 JFK Boulevard
Philadelphia, PA 19103
*Counsel for Plaintiff*

G. Jay Habas, Esquire
717 State Street - Suite 701
Erie, PA 16501
*Counsel for Paula DiGiacomo*

Jeffrey M. Weimer, Esquire
Brian J. Willet, Esquire
225 Fifth Avenue
Pittsburgh, PA 15222
*Attorneys for Defendants Allegheny College and William Merchbaker*

Charles Kelly, Esquire
John A. Marty, Esquire
One PPG Place, 30th Floor
Pittsburgh, PA 15222
*Attorneys for Defendants Meadville Tribune, Community News Paper Holding, Inc. and Keith Gushard*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

By_____
                G. Michael Garcia II