IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KOBE PINKNEY, | ) Case No. 1:19-cv-167 |
| Plaintiff | ) |
| v. | ) UNITED STATES MAGISTRATE JUDGE |
| | ) RICHARD A. LANZILLO |
| MEADVILLE, PENNSYLVANIA, et al, | ) |
| | ) MEMORANDUM OPINION AND |
| Defendants | ) ORDER ON DEFENDANTS' MOTIONS |
| | ) TO DISMISS AMENDED COMPLAINT |
| | ) [ECF NOS. 53, 55, 57 & 59] |

MEMORANDUM OPINION AND ORDER

I. Introduction

Having granted Plaintiff Kobe Pinkney's Rule 60(b) motion for relief from judgment as to certain claims within this Court's federal question jurisdiction, the Court is now obliged to reach the merits of the Defendants' motions to dismiss Pinkney's state law claims over which it previously declined to exercise supplemental jurisdiction. The Court has detailed the procedural and factual background of this case in its prior decisions, *see* ECF Nos. 70, 80, and will not repeat that background here. Because the new information upon which Pinkney based his Rule 60(b) motion does not alter the Court's analysis of his state law claims, the Defendants' motions to dismiss those claims remain ripe for decision.

II. Analysis

   A. Pinkney's Invasion of Privacy by Way of False Light (Count VII), Invasion of Privacy by Way of Unreasonable Intrusion (Count IX), and Intentional Infliction of Emotional Distress (Count XI) Claims Against the Media Defendants

1

Defendants Meadville Tribune (Tribune), Community Newspaper Holding, Inc. (CNH), and Meadville Tribune reporter Keith Gushard (Gushard) (collectively, Media Defendants) have moved to dismiss the Amended Complaint's invasion of privacy/false light claims (Counts VII & IX) and intentional infliction of emotional distress claim (Count XI) against them. ECF No. 57. For the reasons set forth herein, their motion will be granted and the claims against the Media Defendants will be dismissed with prejudice.

> i. Invasion of Privacy
>
> a. Elements of Claims

Pennsylvania courts have recognized four types of invasion of privacy torts: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) publicity given to private facts; and (4) publicity placing a person in a false light. *See DeAngelo v. Fortney*, 515 A.2d 594, 595 (Pa. Super. Ct. 1986) (citing *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 136 n.9 (Pa. 1974)). *See also Santillo v. Reedel*, 634 A.2d 264, 266 (Pa. Super. Ct. 1993); *Restatement (Second) of Torts* § 652A. In the Amended Complaint, Pinkney invokes (4) and (1), alleging that the Tribune, CNH, and Gushard placed him in a false light and unreasonably intruded upon his seclusion by reporting and publishing the news articles dated April 15, 2019, and May 16, 2019 pertaining to his alleged involvement in the assault of Happel.

To maintain a claim for false light liability, a plaintiff "must show that a highly offensive false statement was publicized by [the defendants] with knowledge or in reckless disregard of the falsity." *Santillo*, 634 A.2d at 266 (citing *Neish v. Beaver Newspapers, Inc.*, 581 A.2d 619, 624 (Pa. Super. Ct. 1990)). Therefore, a plaintiff must establish: (1) that the defendant published material that is not true; (2) that the material is highly offensive to a reasonable person; and (3) that the defendant acted with knowledge or in reckless disregard of the falsity of the material and/or the false light in which it

2

would place the plaintiff. *See Anderson v. Perez*, 677 Fed. Appx. 49, 52 (3d Cir. 2017) (citing *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014)). "Mere negligence is not enough to support a claim for false light invasion of privacy." *Id.* at 52-53 (citing *Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. Ct. 1999)). However, the "'[l]iteral accuracy of separate statements will not render a communication "true" where . . . the implication of the communication as a whole was false.'" *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. Super. Ct. 1988) (quoting *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982)). A false light claim can be supported upon proof of the publication of information that, while itself true, tends to imply something false. *See id.* To prevail under such a theory, a plaintiff must establish that the defendant created a false impression by knowingly or recklessly publicizing selective pieces of true information. *See id.*

To establish a tortious intrusion upon his or her seclusion, a plaintiff must show "'an intentional interference with [a person's] interest in solitude or seclusion, either as to his person or his private affairs or concerns.'" *DeAngelo*, 515 A.2d at 595 (quoting *Restatement (Second) of Torts* § 652B, comment a). In so doing, a plaintiff must establish that "the interference with [his or her] seclusion is a substantial one, of a kind that would be offensive to the ordinary reasonable [person], as a result of conduct to which the reasonable [person] would strongly object." *Id.* (quoting *Restatement (Second) of Torts* § 652B, comment d). To state an actionable claim for intrusion upon seclusion, the plaintiff must allege that the defendant has intruded into a private place or invaded the private seclusion of the plaintiff's person or affairs. *See Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984). Such an action "does not depend on any publicity given to the person whose interest is invaded or to his affairs." *Id.* This tort therefore addresses situations where defendants have invaded the plaintiff's seclusion through their actions. Defendants are not liable for the mere examination of public records. *See Restatement (Second) of Torts* § 652B, comment c.

Although Pinkney purports to raise his claim in Count IX as one for unreasonable intrusion on his seclusion, as further discussed below, the facts he alleges regarding the Media Defendants do not correlate to this species of invasion of privacy. As the Court will explain, Pinkney does not allege that any of the Media Defendants intruded into his privacy, but rather that they made public that which he alleges to be a private fact – his home address. He appears, therefore, to be attempting to plead the third type of privacy invasion, publicity given to private facts. The elements of such a claim are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) not of legitimate concern to the public. *See Harris*, 483 A.2d at 1384. Regardless, as discussed below, it ultimately makes no difference how Pinkney characterizes his claim at Count IX; he has failed to state a claim in any event.

          b.        Application to Count VII

Count VII of the Amended Complaint alleges the facts upon which Pinkney bases his claim that the Media Defendants are liable for placing him in a false light.[1] Specifically, he asserts that Gushard wrote an article that was published by the Tribune,[2] reporting that ADA DiGiacomo had given a public statement "that even though the criminal case against Plaintiff had been withdrawn and dismissed, Plaintiff nevertheless remained a suspect in the investigation of the brutal April 7, 2019 assault against Rhett Happel at Julian's Bar in Meadville, Pennsylvania." ECF No. 50, ¶154. He further alleges that there was "overwhelming evidence presented to the Commonwealth" of his innocence, and that, therefore, ADA DiGiacomo's "statement that Plaintiff is still a suspect for the assault of Rhett Happel is at best misleading if not an outright lie, which portrays Plaintiff in a false light, leading his peers at Allegheny College as well as the general public to wrongly believe that

---

[1] Count VII also raises a claim of false light invasion of privacy against ADA DiGiacomo. That allegation will be discussed in regard to her motion to dismiss (ECF No. 53).

[2] Pinkney alleges that the Tribune is owned by CNH. ECF No. 50, ¶154.

Plaintiff was the man who brutally assaulted Happel." *Id.*, ¶155. Count VII therefore only expressly alleges facts regarding the May 16, 2019 article written by Gushard and published by the Tribune and CNH. In his brief in opposition to the motion to dismiss, however, Pinkney references both the May 16 article and the April 15 article and claims that both placed him in a false light. ECF No. 66, p. 39.

Even assuming that Count VII does contain allegations regarding the April 15 article, Pinkney's argument regarding that article suffers from an obvious flaw: the article was written and published before the Media Defendants would have had any reason to question the veracity of the facts contained in the police records that served as the basis for the article. As discussed above, Pinkney's counsel sent the allegedly exculpatory information regarding Pinkney to Gushard in response to the article. In other words, the Media Defendants had no access to the information at the time the article was published. Evidence as to communication *after* the publication does not speak to the defendants' state of mind at the relevant time. *See Anderson*, 677 Fed. Appx. at 53. Pinkney offers no explanation how, in light of this timing, the Media Defendants acted with knowledge or in reckless disregard of the facts in publishing the April 15 article. Indeed, courts have routinely dismissed false light claims based on statements accurately publicizing a plaintiff's arrest even where the plaintiff was later exonerated. *See, e.g., Minor v. Cumberland Tp.*, 2015 WL 5691120, at *3 (W.D. Pa. Sept. 28, 2015); *Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015).

Pinkney's false light claims regarding the May 16 article fare no better. While that article was at least written and published after Pinkney's counsel had communicated the evidence exonerating his client to Gushard, the article accurately reported that the charges against Pinkney had been withdrawn but that, according to ADA DiGiacomo, Pinkney remained a suspect to the crime. Pinkney himself admits that the article was a "largely verbatim account[] of the Crawford County District Attorney's prosecution of Plaintiff." ECF No. 66, p. 39. It is important to note that the

5

article did not state or reasonably imply that Pinkney committed the crime, merely that the District Attorney's office still considered him to be a suspect. There is nothing false about this publication. The information provided by Pinkney's counsel to Gushard shed no light on whether Pinkney was still a suspect; it did nothing more than provide a basis for believing that he did not commit the underlying assault. The May 16 article did not tend to imply that he did and, in fact, expressly highlighted that the charges had been withdrawn. To the extent that Pinkney asserts that the Media Defendants were obliged to speculate as to why the charges had been dropped or to challenge ADA DiGiacomo's position that he remained a suspect, in no way does the failure to do so constitute recklessness. Likewise, the "selective" decision not to publish the information provided by counsel does not place Pinkney in a false light. The articles, taken as a whole, do not imply any guilt on Pinkney's behalf, nor can they reasonably be interpreted as attempting to build a case against Pinkney; rather, they report that charges were filed and the nature of those charges, that the charges were later withdrawn, and that, according to ADA DiGiacomo, Pinkney was still being considered as a suspect.

In sum, the facts alleged in Count VII of the Amended Complaint, even taken as true, do not support a claim that the Media Defendants violated Pinkney's privacy by placing him in a false light. Accordingly, Count VII is dismissed with prejudice as to the Media Defendants.[3]

---

[3] To the extent the Count VIII of the Amended Complaint asserts a false light liability claim against Sergeant Merchbaker and Allegheny, this claim is also dismissed with prejudice. The Amended Complaint does not allege any facts to support that either of these defendants publicized a highly offensive false statement regarding Pinkney with knowledge or in reckless disregard of the falsity of the statement.

c.       Application to Count IX

In Count IX of the Amended Complaint, Pinkney asserts that the Media Defendants are liable for invasion of privacy by unreasonable intrusion. Specifically, he alleges that the April 15 article written by Gushard and published by the Tribune and CNH contained his home address in Upper Marlboro, Maryland, and that this publication of his home address, in conjunction with the material in the article that "he had committed a heinous felonious assault against an unsuspecting person" egregiously and intentionally intruded upon the seclusion of his private concerns. ECF No. 50, ¶¶168-69. However, as the Court explained above, a claim for intrusion upon seclusion involves situations where the defendant intruded into a private place or invaded the private seclusion of the plaintiff's person or affairs and does not depend on the publicity given to the person or to his or her affairs. *See Harris*, 483 A.2d at 1384. In other words, this type of invasion of privacy involves situations where the defendant has intentionally and substantially invaded the plaintiff's seclusion either physically or by some sort of investigation or examination. None of the defendants named in Count IX did so.[4] Pinkney's home address was obtained from the Police Criminal Complaint generated during the investigation, a public document. Reporting information from a public record does not intrude on Pinkney's seclusion.[5]

As noted, the facts alleged in Count IX probably correlate more closely to a claim of invasion of privacy for publication of private facts. However, the alleged facts fail to establish a claim under that theory as well. As discussed, one of the elements Pinkney would have to prove to establish a tort claim for publication of private facts is that the publicized material was, in fact, private. *See Harris*, 483 A.2d at 1384. A fact contained in a public record, such as a police report, is

---

[4] The Court notes that there is no allegation of any intrusion to Pinkney's home residence in Maryland as a result of the publication of either the April 15 or the May 16 articles.

[5] In any event, publicizing a person's address generally will not establish a claim for intrusion upon seclusion. *See DeAngelo*, 515 A.2d at 595-96; *Brignola v. Home Properties, L.P.*, 2013 WL 1795336, at *12 (E.D. Pa. Apr. 26, 2013).

generally deemed to be not private but public. *See Jackson v. Jackson*, 2014 WL 4060571, at *16 (W.D. Pa. Aug. 15, 2014) (citing *Jenkins v. Bolla*, 600 A.2d 1293, 1296 (Pa. Super. Ct. 1992)). Moreover, a person's home address is not ordinarily a private fact sufficient to support an action for publication of private facts. *See Brignola v. Home Properties, L.P.*, 2013 WL 1795336, at *12 (E.D. Pa. Apr. 26, 2013); *Burrell v. Parexel Int'l, LLC*, 2012 WL 4757936, at *5 (D. Md. Oct. 4, 2012); *McNutt v. New Mexico State Tribune Co.*, 538 P.2d 804, 808 (N.M. Ct. App. 1975).[6] Considering that, here, Pinkney's home address was obtained from a record readily available to the public, it cannot reasonably be construed as a private fact.

Accordingly, the Amended Complaint fails adequately to plead that the Defendants either intruded upon Pinkney's seclusion or publicized his private facts. Count IX is therefore dismissed with prejudice.

    ii.   Intentional Infliction of Emotional Distress

     a.   Elements of Claim

Pinkney alleges in Count XI of the Amended Complaint that the Media Defendants, among others,[7] are liable for intentional infliction of emotional distress. Under Pennsylvania law,

> [t]o prevail on an intentional infliction of emotional distress claim, a plaintiff must show: (1) the conduct of defendant was intentional or reckless; (2) the conduct of defendant was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the distress was severe.

---

[6] There is case law indicating that a person has some protectable privacy interest in his or her home address. *See, e.g., Warner v. Township of South Harrison*, 2010 WL 3001969 (D. N.J. July 26, 2010). However, in these cases, the courts are typically discussing the plaintiff's constitutional right of privacy, which requires certain balancing of interests between the individual and the government. The constitutional right to privacy does not equate with a common law privacy right recognized by state tort law. *See Nunez v. Parchman*, 578 F.3d 228, 232 n.10 (3d Cir. 2009). Cases such as *Warner* are therefore inapposite here.

[7] The Court will address the Count XI allegations against those other defendants in the course of considering their motions to dismiss.

*Sabo v. UPMC Altoona*, 386 F. Supp.3d 530, 556 (W.D. Pa. 2019) (citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)). "Outrageous" and "extreme" conduct is defined as "conduct that is 'so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarding as atrocious, and utterly intolerable in civilized society.'" *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 n.5 (Pa. Super. Ct. 2004) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). Liability under this cause of action is "reserved by the courts for only the most clearly desperate and ultra extreme conduct." *Hoy*, 720 A.2d at 754. The determination as to whether the alleged conduct may reasonably be regarded as so extreme as to permit recovery is left to the court in the first instance. *See Salerno v. Phila. Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. Ct. 1988).

    b.  Application to Count XI

Possibly because it is intended to cover the different conduct of numerous defendants, Count XI is very vague as to the factual basis for Pinkney's claim. Count XI merely references the acts alleged elsewhere in the Amended Complaint and asserts that this conduct constitutes intentional infliction of emotional distress. Arguably, this is insufficient to weather a Rule 12(b)(6) challenge. Even ignoring this pleading deficiency and construing the entirety of the Amended Complaint and Pinkney's brief in opposition to the pending motions liberally in favor of Pinkney, he has failed to plead a cause of action for intentional infliction of emotional distress against the Media Defendants.

The Amended Complaint may be vague as to the factual basis for Count XI, but Pinkney does set forth the facts he alleges support this count as it relates to the Media Defendants in his brief in opposition to the motion to dismiss. He asserts that his intentional infliction of emotional distress claim against these defendants is based on their publication of the April 15 and May 16 articles regarding his involvement in the assault of Happel, and on their refusal to publish "a

proffered press release" prepared by Pinkney's counsel refuting the allegations against Pinkney[8] and to ensure fair and balanced coverage of the matter. ECF No. 66, p. 34. Even if Count XI could be read to allege these facts, it is insufficient to state an actionable claim.

As the Court discussed above, the April 15 and May 16 articles, by Pinkney's own admission, constituted nearly verbatim reports of the records generated in the course of the investigation and prosecution of the case against him. As the Court further explained, the articles themselves accurately report the facts they purport to set forth and do not place Pinkney in any derogatory false light. News articles reporting allegations of criminal activity have been found not to implicate the extremely high standard needed to maintain an intentional infliction of emotional distress claim. *See Salerno*, 546 A.2d at 1172-73; *Collins v. Purdue University*, 703 F. Supp.2d 862, 871-73 (N.D. Ind. 2010). Similarly, here, the Media Defendants' publication of the April 15 and May 16 articles does not come close to the type of outrageous behavior that is utterly intolerable to society.

As to Pinkney's allegations that the Media Defendants are liable for failing to report the information provided by his counsel, it well established that, under Pennsylvania law, there is no cognizable claim for intentional infliction of emotional distress where the failure to act forms the basis of the claim. *See Jackson v. Sun Oil Co. of Pa.*, 521 A.2d 469, 471 (Pa. Super. Ct. 1987); *Sabo*, 386 F. Supp.3d at 557. Indeed, the *Jackson* case is particularly instructive. In that case, the plaintiff was suspended by the defendant, his employer, from making service calls because a customer had accused him of making sexually suggestive comments and advances. After an investigation that included the plaintiff taking and passing a lie detector test, he was permitted by the defendant to resume his normal duties. The plaintiff subsequently filed a claim for intentional infliction of

---

[8] Although Pinkney characterizes his counsel's April 15, 2019 letter to Gushard as a proffered press release, the letter identifies itself as a response to the April 15 article and does not indicate that it or the information contained therein is intended to be published. It merely provides information and asks that the "coverage of this case be balanced and fair." ECF No. 50-1, pp.12-14.

emotional distress based on his employer's failure to publicize to his co-workers the results of the investigation clearing him of wrongdoing. The trial court granted summary judgment on the defendant's behalf, and the Pennsylvania Superior Court affirmed. In so doing, the court emphasized that the employer was under no obligation to publicize information to clear the plaintiff. *See* 521 A.2d at 471-72. In the instant matter, the Media Defendants likewise had no legal obligation to publish exculpatory information provided by Pinkney at his counsel's request.

Accordingly, even giving the broadest possible reading to Count XI, the facts alleged do not establish that the Media Defendants intentionally inflicted emotional distress on Pinkney. As such, Count XI is dismissed with prejudice as to the Media Defendants.

> B. Pinkney's False Light Defamation (Count VII), Invasion of Privacy (Count X) and Intentional Infliction of Emotional Distress (Count XI) Claims Against ADA DiGiacomo

Each of Pinkney's state law claims against ADA DiGiacomo —false light defamation, invasion of privacy, and intentional infliction of emotional distress—is based upon ADA DiGiacomo's statement to Gushard that Pinkney remained a suspect in the attack on Happel even after the dismissal of the charges against him. ADA DiGiacomo's motion to dismiss both challenges the sufficiency of the facts alleged in the Amended Complaint to support each of these claims and raises the defense of absolute immunity as a bar to all. Because the Court finds that the claims are barred by the latter, it will not address ADA DiGiacomo's other arguments.

ADA DiGiacomo argues that she is shielded from liability on Pinkney's state law claims by Pennsylvania's doctrine of absolute privilege for "high public officials." Pennsylvania courts have held that "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001). This includes "civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in*

11

*the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction."* Matson v. Margiotti, 371 Pa. 188, 88 A.2d 892, 895 (1952) (emphasis in original) (citations omitted). The privilege is not for the benefit of the official, but to protect "society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business." *Lindner v. Mollan*, 544 Pa. 487, 491, 677 A.2d 1194, 1196 (1996) (quoting *Montgomery v. City of Philadelphia*, 392 Pa. 178, 183, 140 A.2d 100, 103 (1958)).

The Pennsylvania Supreme Court has explicitly applied this immunity to assistant district attorneys acting in the course of their duties:

> Assistant district attorneys, however, are essential to district attorneys in fulfilling responsibilities of their high public offices, to wit, in carrying out the prosecutorial function. To subject assistant district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous and most judgment-proof from vigorously performing their prosecutorial functions, and would inevitably result in criminals going unpunished ... That interest dictates that assistant district attorneys be immune from suit.[9]

*Durham*, 772 A.2d at 70. *See also Freach v. Commonwealth*, 23 Pa. Cmwlth. 546, 354 A.2d 908 (1976) (Superintendent of the Parole Division of the Board of Probation and Parole, District Attorney and the Assistant District Attorney of Delaware County were high public officials for purposes of absolute privilege), *aff'd in part*, 471 Pa. 558, 370 A.2d 1163 (1977); *Mosley v. Observer Publishing Co.*, 422 Pa. Super. Ct. 255, 619 A.2d 343 (1993) (County Attorney was high public official for purposes of absolute privilege), *appeal denied*, 535 Pa. 622, 629 A.2d 1382 (1993); *McCormick v. Specter*, 220 Pa. Super. Ct. 19, 275 A.2d 688 (1971) (District Attorney was high public official for purposes of absolute privilege); *McCormick v. Specter*, 220 Pa. Super. Ct. 19, 21, 275 A.2d 688, 689 (1971)

---

[9] In contrast, the prosecutorial immunity enjoyed under federal law has been found not to apply to state law claims for defamation and false light arising out of a prosecutor's statements to the press. *Garcia v. Casey*, 2020 WL 718301, at *9 (N.D. Ala. Feb. 12, 2020).

("absolute immunity accorded his high official position" shielded District Attorney from libel and slander claim arising out of oral and recorded statements he had made in public).

Thus, because ADA DiGiacomo's position falls within the scope of those protected by Pennsylvania's absolute privilege for high public officials, the only remaining question is whether her statement that Pinkney remained a suspect after the Commonwealth dropped the charges against him was made within the course of her duties or powers and within the scope of her authority. As a guiding principle, Pennsylvania courts emphasize that the privilege "must be limited to those statements and actions which are in fact 'closely related' to the performance" of the defendant's "official duties." *McCormick*, 220 Pa. Super. at 22, 275 A.2d at 689. In *Hall v. Kiger*, 795 A.2d 497 (2002), the Pennsylvania Commonwealth Court considered two factors to be relevant to in determining whether statements meet this standard in the context of a defamation case: (1) the formality of the forum in which the alleged defamation occurred; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages. *Id.* at 501. Beyond identifying these considerations, Pennsylvania caselaw is not especially clear regarding their application. In *McKibben v. Schmotzer*, 700 A.2d 484 (Pa. Super. Ct. 1997), for example, the mayor of a borough was determined to be entitled to immunity for harsh and untrue statements she made in a press release explaining the discharge of the police chief, but not for comments she made subsequently as a private citizen following a hearing on the criminal complaint she had brought against the police chief. The Superior Court emphasized that the mayor's press release was issued in her official capacity, but her statements after the hearing were made when she was "no more than a private citizen seeking to enforce *her private criminal complaint*." *Id.* at 492 (emphasis in original).

In the present case, the Amended Complaint acknowledges that Gushard's inquiry to ADA DiGiacomo and her response came in the context of the Commonwealth's dismissal of the charges against Pinkney. The statement itself related specifically to the criminal investigation and possible

13

future prosecutorial action.  Nothing in the Amended Complaint indicates that ADA DiGiacomo was pursing any personal interest outside of the duties of her office when she responded to Gushard's inquiry.  These facts thus align this case with *McCormick v. Specter*, where the Pennsylvania Superior Court held that a district attorney's statements during a press conference, although excessive and potentially defamatory of the plaintiff, were protected by high public official immunity because they related to an ongoing criminal investigation and potential future prosecutorial action. 220 Pa. Super. at 22, 275 A.2d at 689.  Because the facts alleged in the Amended Complaint place ADA DiGiacomo's statement within the course of her duties and within the scope of her authority or jurisdiction as an assistant district attorney, Pinkney's false light defamation, invasion of privacy, and intentional infliction of emotional distress claims against her are barred by high public official immunity.  Accordingly, these claims will be dismissed with prejudice.

        C.  Intentional Infliction of Emotional Distress Against Sergeant Merchbaker and Allegheny

There can little doubt that the events experienced by Pinkney between April 11 and May 16, 2019 would have been extremely distressing to even the most resilient individual.  While pursuing his higher education, Pinkney abruptly found himself erroneously identified as the perpetrator of a felonious assault, criminally charged as such, and removed from his philosophy classroom to be placed under arrest.  As to Pinkney's intentional infliction of emotional distress claim against Sergeant Merchbaker and Allegheny, the question is whether the latter action was so "'so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarding as atrocious, and utterly intolerable in civilized society.'" *Reeves*, 866 A.2d at 1122 n.5 (quoting *Hoy*, 720 A.2d at 754).  While reasonable minds certainly could question whether it was necessary to extract Pinkney from a classroom filled with his peers, caselaw does not support that the act of doing so constituted extreme and outrageous conduct that it triggers potential liability for

intentional infliction of emotional distress. As noted, when Sergeant Merchbaker removed Pinkney from the classroom, Officer Frum had a facially valid warrant for his arrest. While it is unfortunate that those involved did not choose a less public environment to effectuate the arrest, their choice to proceed as they did is not actionable under Pennsylvania law. Accordingly, Count XI will be dismissed against Sergeant Merchbaker and Allegheny.

### D. Conversion Claim Against Meadville (Count XII, incorrectly designated as Count X)

At Count XII, Pinkney asserts a claim for conversion against Meadville based upon its refusal to return the ring seized from his dormitory room pursuant to a search warrant. ECF No. 50, ¶ 183-189. The Amended Complaint is unclear whether Pinkney asserts this claim pursuant to the 14th Amendment or as one of the state law claims his Amended Complaint presents pursuant to this Court's supplemental jurisdiction. *Id.* at ¶ 1.

To the extent this claim is construed as one of deprivation of property under the Fourteenth Amendment, it is not actionable because Pinkney had an adequate remedy at state law. *See e.g., Tate v. Neal*, 1996 WL 131943 (E.D. Pa. 1996) (dismissing the complaint on screening because the plaintiff had an adequate post-deprivation remedy to address his claim that the undercover officer seized his property and failed to return it). The Supreme Court of the United States has held that neither negligent nor intentional deprivations of property violate the Due Process Clause if there is a meaningful post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 530 (1981). Here, Pinkney has an adequate remedy under state law. Pennsylvania Rule of Criminal Procedure 588 permits "a person aggrieved by a search and seizure" to file a motion for return of property "in the court of common pleas for the judicial district in

which the property was seized." Pa. R Crim. P. 588.[10] Federal courts have recognized this rule and similar rules as complying with due process because they provide adequate post-deprivation remedies. *See, e.g., Welsch v. Township Of Upper Darby*, 2008 WL 3919354 (E.D. Pa. Aug. 26, 2008); *Potts v. City of Phila.*, 224 F.Supp.2d 919, 938 (E.D. Pa. 2002) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available"); *Taylor v. Naylor*, 2006 WL 1134940, at * 3-4 (W.D. Pa. Apr.26, 2006) (finding Pa. R. Crim. P. 588, replevin, and conversion statutes adequate post-deprivation remedies for detained and eventually destroyed personal property).

As the foregoing discussion indicates, federal courts have recognized a state-law conversion or replevin claim as a remedy in situations involving improperly seized property. Because a federal cause of action against Officer Frum remains pending in this action, this Court has supplemental jurisdiction to hear Pinkney's conversion claim against Meadville. *See* 28 U.S.C. § 1367(a). Accordingly, the Court will deny Meadville's motion to dismiss Count XII of the Amended Complaint.

III.   Order

For the reasons set forth above and in this Court's Opinion and Order (ECF No. 80) granting Plaintiff Kobe Pinkney's motion (ECF No. 72) pursuant to Fed. R. Civ. Pro. 60(b), it is hereby ORDERED as follows:

---

[10] The Rule is applicable to civil cases as well. Rule 588's broad language addresses all "aggrieved by a seizure." It does not limit the recourse to only those involved in a criminal matter. Further, Pennsylvania has recognized Rule 588 proceedings as civil in form, but "quasi-criminal in character." *Commonwealth v. Howard*, 931 A.2d 129, 131 (Pa. Cmwlth. 2007).

A. The motion to dismiss (ECF No. 53) filed on behalf of Defendant Paula DiGiacomo is GRANTED and all claims against her are hereby DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to terminate Paula DiGiacomo as a Defendant in this action;

B. The motion to dismiss (ECF No. 55) filed on behalf of Defendants Meadville, Pennsylvania, Michael J. Tautin and Jared Frum is GRANTED in part and DENIED in part. The motion is DENIED as to Counts II, III and IV of Plaintiff's Amended Complaint against Defendant Jared Frum and as to Count XII (Conversion) against Defendant Meadville, Pennsylvania. In all other respects, the motion is GRANTED and all other claims against these Defendants are hereby DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to terminate Michael J. Tautin as a Defendant in this action;

C. The motion to dismiss (ECF No. 57) filed on behalf of Defendants Meadville Tribune, Community Newspaper Holding, Inc. and Keith Gushard is GRANTED and all claims against these Defendants are hereby DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to terminate Meadville Tribune, Community Newspaper Holding, Inc. and Keith Gushard as Defendants in this action; and

D. The motion to dismiss (ECF No. 59) filed on behalf of Defendants Allegheny College and William Merchbaker is GRANTED and all claims against these Defendants are hereby DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to terminate Allegheny College and William Merchbaker as Defendants in this action.

IT IS SO ORDERED.

_____
RICHARD A. LANZILLO
United States Magistrate Judge

Dated:      April 27, 2020